FEDERAL HOME LOAN BANK OF SAN FRANCISCO; W. W. McAllister and William K. Divers, as members of the Home Loan Bank Board; A. V. Ammann; George K. Bramley; and the Federal Savings and Loan Insurance Corporation, a federal corporation, Petitioners,

v.

Honorable Peirson M. HALL, Judge of the District Court of the United States for the Southern District of California; the United States District Court for the Southern District of California; Mallonee, Bucklin, and Fergus, acting as the Shareholders Protective Committee of Long Beach Federal Savings and Loan Association; Long Beach Federal Savings and Loan Association; Title Service Company; Robert H. Wallis; First Federal Savings and Loan Association of Wilmington; Home Investment Co.; George Turner; First Federal Savings and Loan Association of Bellflower and John D. Willhoit, Respondents.

No. 14378.

United States Court of Appeals Ninth Circuit.

July 18, 1955.

Rehearing Denied Oct. 12, 1955.

As Amended Oct. 26, 1955.

See, also, 122 F.Supp. 960.

Verne Dusenbery, Portland, Or., Philip H. Angell, Robert M. Adams, Jr., San Francisco, Cal., Sylvester Hoffmann, Los Angeles, Cal., for Federal Home Loan Bank of San Francisco.

Warren E. Burger, Asst. Atty. Gen., Paul A. Sweeney, Donald B. MacGuineas, Attorneys, Dept. of Justice, Washington, D. C., for W. W. McAllister, et al., T. T. Wade Harrison, Gen. Counsel, Mose Silverman, Asst. General Counsel, Washington, D. C., of counsel.

Charles K. Chapman, Long Beach, Cal., for respondent Long Beach Federal Savings and Loan Ass'n., and First Federal Savings and Loan Assn. of Bellflower.

Wyckoff Westover, Los Angeles, Cal., for respondents Mallonee, Bucklin and Fergus, etc.

John D. Miller, Long Beach, Cal., for respondent Title Service Company, Raymond Tremaine, Los Angeles, Cal., for respondent Robert H. Wallis.

W. I. Gilbert, Jr., Los Angeles, Cal., for respondent 1st Federal Savings & Loan Assn. of Wilmington. F. Henry NeCasek, Long Beach, Cal., for respondents Home Investment Co. and George Turner.

Emmett E. Doherty, Los Angeles, Cal., for respondent John D. Willhoit.

J. E. Simpson, Los Angeles, Cal., for respondent Court and Judge.

Before STEPHENS, HEALY and BONE, Circuit Judges.

BONE, Circuit Judge.

On June 4, 1954, above named Petitioners filed with this Court a motion for leave to file an attached petition in which they prayed for writ of mandamus, injunction and other appropriate relief, and for a rule to show cause directed to the Respondents above named. The prayer of the petition was for an order or orders as follows:

"1. Directing dismissal forthwith of Action No. 5678 in said District Court.

"2. Directing dismissal forthwith of Action No. 5421 in said District Court, together with all cross-actions, actions in interpleader, actions in intervention and third party actions pending therein.

"3. Directing dismissal of the cross-claim and third party complaint filed by Long Beach Federal Savings and Loan Association, the complaint in intervention and interpleader of Title Service Company, the complaint in intervention of Robert H. Wallis, the complaint in intervention of John D. Willhoit, and the cross-claim of Home Investment Company in said Action No. 13979.

"4. Directing the return forthwith to San Francisco Bank of promissory notes and collateral heretofore ordered returned by the mandate.

"5. Directing dismissal forthwith of Action 15588 in said District Court.

"6. Directing the remand forthwith of said Action 13979 to the Superior Court of the State of California in and for the County of Los Angeles.

"7. Enjoining respondents other than said District Judge and District Court from prosecuting any action or proceeding asserting issues which have been finally determined by this Court.

"8. For such other and further relief as to the Court may seem just and equitable."

Upon consideration of the allegations contained in said motion and petition, this Court entered an order granting leave to file the petition and directing that a written response thereto by Respondents named in said petition be filed with this Court and served upon counsel for the above named Petitioners.

Thereafter, Respondent District Judge filed with this Court his response, the same being a Return and Answer to the said petition coupled with a motion to dismiss the petition. The Respondent Judge filed a brief in support of the allegations in the aforesaid documents.

The other respondents above named joined in filing a Return and Answer to the aforesaid petition. In this document these respondents appeared specially and voiced objection to the jurisdiction of this Court over the persons of these respondents or over the subject matter of the said petition.[1] Upon a prior request

---

1. Our opinion in Home Loan Bank Board v. Mallonee (appeal in the Mallonee case reported in 9 Cir., 196 F.2d 336) indicates that the several appellees in that appeal were:

Federal Home Loan Bank of Los Angeles and certain (six) of its member Associations; "Shareholders Protective Committee," members of this group being the plaintiffs in the so-called original Mallonee action; First Federal Savings and Loan Association of Wilmington (a member Association of the Los Angeles Bank); Robert H. Wallis; George Turner; Title Service Company; Home Investment Company of Long Beach and others, intervenors; Long Beach Federal Savings and Loan Association. The so-called Mallonee action, which was numbered 5421 in the court of Respondent District Judge, brought all of these parties into its original orbit by various interpleaders, cross-claims, answers and other pleadings filed therein.

These appellees in the original Mallonee appeal are asserting in the instant proceeding that in *none* of our (three) opinions and mandates thereon did we order that Respondent District Judge dismiss the said action (No. 5421) as a consequence of which that action is still "pending" in the court of the said Judge.

Two Respondent litigants named in the instant show-cause proceeding were not named as appellees in the Mallonee appeal. They are First Federal Savings and Loan Association of Bellflower and John D. Willhoit. They appear to have come into this pyramiding litigation at a later time.

The specific objection to the jurisdiction of this Court in this show-cause proceeding is voiced in the following statement.

"No summons, order or other process of this Court of Appeals has been served upon said Respondents or any of them. The records of this Court of Appeals disclose the only service made was by mail upon counsel who had appeared for Respondents in entirely separate proceedings."

The records of the many cases in this litigation now pending before the lower court and the records of cases therein now pending on appeal in this Court, (all of these cases and pleadings therein being filed in, and as a part of, this prolonged litigation) serve to reveal that the parties plaintiff in the so-called "Mallonee-Association group" and parties collaborating with them in the early stages of that litigation are, through counsel, still actively asserting (in the various additional and pending actions referred to in this opinion) substantially the same rights they asserted in the original pleadings in the Mallonee case. The names of these original litigants are set out just above.

The objection to jurisdiction over the persons of Respondent litigants, due to

of their counsel for advice as to the scope of argument we desired to have presented on the instant petition for relief we advised counsel for all parties that we desired them to defer argument on the question of *remand* of a certain action (hereafter referred to as the "note case")[2] to a California State Court. This

lack of service of process on them, rises out of the fact that service herein was made on their counsel in the pending actions we refer to in this opinion. We think that service of process on counsel for Respondent litigants in the instant show-cause proceeding was proper and sufficient. Practically all of these litigants, as this opinion will indicate, are presently continuing to maintain and prosecute additional actions in which they revive and reassert all of the claims for relief originally asserted by them as complaining parties in the old Mallonee action. They assert that they are still parties in the original Mallonee action and (as above noted) that action has not been dismissed and is therefore still pending for trial in the court of Respondent District Judge.

As we shall later point out (see footnotes 3 and 6) we have before us the contention of these parties through their counsel that *all* of the issues in the Mallonee case have, by a Congressional act, been revived for trial anew in said district court precisely as though none of the issues therein had been adjudicated by any court. Certain additional actions, which are the subject of a later comment in this opinion, were directly filed in the old Mallonee action (No. 5421 below) and in other instances filed as new actions in which issues are presented which directly grow out of, and are an essential and vital part of the issues presented in the original Mallonee complaints.

It is clear beyond dispute that this procedure of Respondent litigants is a deliberate process invoked as a means of continuing the original Mallonee litigation by reviving all of the basic and controlling issues therein in the new actions filed in the lower court. It is significant that in the pleadings filed in these new and additional actions, the plaintiffs are represented by the same counsel representing them in the old original Mallonee action, and for this reason we regard as untenable the argument that such continuing counsel may not validly and effectively be served with process in the instant show-cause proceeding. This becomes all the more obvious when the whole record before us reveals that their clients are vigorously asserting the right to continue, and they are continuing, the litigation of all of the material issues

presented in the original Mallonee litigation of 1946 by filing below the various new actions referred to.

The challenge to the jurisdiction of this Court to entertain the petition of petitioners and to proceed in the original writ proceedings before us is rejected as without merit.

2. The so-called "note case" presents issues all of which had their origin in the issues which we considered and passed upon in our opinion reported in 196 F. 2d 336, wherein we settled the status of Ammann as Conservator of Association. The four promissory notes involved in this action are the notes issued to San Francisco Bank in the name of and for the benefit of Association during the period in which Ammann was serving as Conservator of said Association.

A striking and typical example of the expanding and apparently illimitable orbit of this litigation is found in the pleadings of Association in two additional "fringe" actions in the said note case, No. 13,979 which were filed in the lower court on October 13, 1952. These two new actions were respectively styled "cross-claim" of Long Beach Federal Savings and Loan Association and "third-party complaint." In each of these two new actions (made part of case 13,979) approximately fifty-three individuals were made defendants and were named in their capacity as individuals, and/or as federal officials or federal agents serving in various capacities. Certain of this group were made defendants as individuals and as agents and officers of large federal agencies. The Federal Home Loan Banks of San Francisco, and the former Portland and Los Angeles Home Loan Banks were named as defendants along with an additional eight thousand "Does." This army of "Does" is variously identified in the caption of the pleadings as being composed of copartnerships, corporations, unincorporated associations and public officials. One thousand of them are identified as receivers, conservators, executors, administrators, guardians, trustees or other public representatives.

By the above cross-claim and third party complaint Long Beach has injected into the note case and seeks to relitigate *all* of the issues which were litigated and determined in the so-called consolidated actions and which were before us in the so-called "Mallonee" case. These plead-

action is now pending in the court of Respondent District Judge under number 13,979. Two appeals growing out of certain proceedings in the lower court in action 13,979 are now pending in this Court under our docket numbers 14,587 and 14,632. Pursuant to leave granted by this Court on March 25, 1952, action 13,-979 was originally instituted in the State Court by San Francisco Bank and later removed to the lower court. Pursuant to our suggestion, no argument was presented in the instant proceeding on the issue of *remand* of 13,979. (See paragraph 6, supra, of prayer of petitioners' petition referring to said case 13,979.) The "note case" is an action instituted by San Francisco Bank against Long Beach Federal Savings and Loan Association (one of the Respondent litigants herein) to recover judgment on four notes of Long Beach (which had been given to evidence a loan to Long Beach while one Ammann was serving as its Conservator) and to foreclose the collateral securing the same.

In this opinion we will sometimes refer to the Respondent District Judge and to his court as the "District Judge," as the "court below" or as "the lower court," as the context will permit or suggest. Respondent litigants herein may be so designated, or merely be referred to as the "litigants." "Home Loan Bank of San Francisco" will be referred to as "San Francisco Bank." As a group, petitioners in the instant petition for relief may sometimes be referred to as the "petitioners herein" or "petitioners," and their petition as "petition" or "petition for relief." Any reference herein to "Association," "Long Beach Association" or "Long Beach," means the Long Beach Federal Savings and Loan Association, one of Respondent litigants herein. The term "consolidated cases" or "consolidated actions" means the two cases before us on the appeal in which we rendered the decision reported in 196 F.2d 336, and frequent reference will be made to this decision. One of the cases before us on that appeal was the so-called Mallonee action; the other was the so-called Los Angeles action. We later refer to the status of the Los Angeles action (No. 5678 in the lower court) in the long litigation of which it was a part. Where we refer to Home Loan Bank Board the term includes "Administration" (in existence in 1946) where justified in context. As concerns the status of this Board, our opinion in the Mallonee case refers to certain reorganization orders creating "Administration" which were in force in 1946.

■ The above noted petition and all responses thereto came on for hearing before this Court on February 28, 1955, and arguments for all parties were presented. This Court has before it and has duly considered a vast array of copies of numerous records and files in many cases, which copies were filed as exhibits for our inspection by the several counsel present at the hearing. We find that these "exhibits" are · correct copies of pleadings, records and documents now and/or heretofore lodged and filed in ac-

---

ings bring in as defendants and cross-defendants substantially all the principal parties who had been named as cross-defendants in the "consolidated actions." They incorporate by reference and have attached as exhibits pleadings filed by Long Beach Association in the consolidated actions, a fact to which we refer in this opinion and where we also note the scope of the prayers for relief which covered and embraced all former pleadings of every kind in actions 5421–5678–7989 and make them a part of these new actions in case No. 13,979. (Action No. 5678 is the original "Los Angeles Action.")

In our opinion we also refer to cross-claims filed in the note action 13,979 by Title Service Company and Robert H. Wallis. In these pleadings these two litigants also seek the identical relief sought by them in the consolidated actions and incorporate by reference and have attached as exhibits all of the pleadings filed by them in the consolidated actions. In these pleadings they also name as defendants substantially all of the parties named in the above mentioned cross-claim and third party complaint of Long Beach Association, including the eight thousand defendant Does there designated by Long Beach Association.

tions pending in the lower court, and we take judicial notice of these actions and pleadings therein. In this connection, it should be noted that Respondent litigants do not challenge the fact of their filing and docketing in the lower court, nor do they challenge the correctness of the said copies. All of said noted pleadings and actions directly relate to, embrace and/or present (as their controlling and basic contentions and issues) practically all of the contentions and issues heretofore presented, considered and adjudicated by this Court in three later noted opinions and decisions. See particularly our decision in case No. 12,511 (later noted Mallonee opinion) which dealt with and disposed of issues presented in what we there called and are here referred to as the "consolidated cases."

In addition to the above noted case records so filed with us, counsel for San Francisco Bank filed in open court at the argument a printed brief (styled "Partial Chronology") which "summarizes" certain of the pleadings and procedures in the lower court since our mandate of May 21, 1953 was issued. The procedural activities revealed by this additional summary of the record are so numerous that we are not justified in setting them out at length in this opinion. However, they are pertinent to our inquiry and have provided much aid in considering and disposing of the array of issues before us. This document was filed by reputable officers of this Court and no objection has been made challenging its filing or its accuracy in detailing the facts therein enumerated. We therefore accept it as a record correctly stating the facts therein set forth.

It is urged by petitioners herein that the scope, nature and form of orders and/or relief sought by them in the aforesaid petition is justified and made necessary by the showing made in the records, files, and exhibits in the entire body of litigation which we here consider.

This litigation has been engaging the attention of the courts for approximately nine years, and petitioners argue that the aforesaid record clearly reveals that Respondent litigants have instituted, and are now instituting numerous harassing proceedings and actions of the lower court (certain of these actions being still pending in said court) and that in and by such proceedings and actions Respondent litigants have wrongfully and erroneously asserted, and are continuing to assert legal claims for relief against these petitioners which are without basis or foundation in law in that such claims have been adjudicated adversely to such claims in and by previous controlling holdings and rulings of this Court in its opinions and decisions herein referred to, and in and by holdings and decisions of the Supreme Court of the United States directly affecting the litigation here considered.

And as a further ground for granting the relief here sought by petitioners, it is urged by petitioners that the lower court has wrongfully and without justification in law entertained, and continues to entertain, all of the said proceedings and/or actions all to the injury and harassment of petitioners and without regard to the said decisions and opinions of this Court and of the Supreme Court; that as a consequence petitioners have no adequate remedy against the proceedings here complained of save and except by and through the remedy prayed for.

Since our three opinions and decisions will be frequently mentioned we identify them and their dates at this point. They are: Home Loan Bank Board v. Mallonee (Federal Home Loan Bank of San Francisco v. Federal Home Loan Bank of Los Angeles), No. 12,511, 9 Cir., 196 F.2d 336, dated April 2, 1952; Fahey v. O'Melveny & Myers (Federal Home Loan Bank of San Francisco v. O'Melveny & Myers), No. 12,591, 9 Cir., 200 F.2d 420, dated November 6, 1952; Fahey v. Calverley (Federal Home Loan Bank of San Francisco v. Calverley; Fahey v. Gilbert; Federal Home Loan Bank of San Francisco v. Gilbert; Fahey v. Walker; Federal Home Loan Bank of San Francisco v. Walker), Nos. 13,411, 13,558, 12,-

575, 12,893, 13,055, 9 Cir., 208 F.2d 197, dated November 23, 1953.

In the interest of brevity these opinions and decisions will generally be referred to respectively as the "Mallonee opinion" (in the so-called "consolidated cases"), "O'Melveny & Myers opinion," and "Calverley opinion." Our Calverley

opinion disposed of five appeals from the court below.

Pursuant to this Court's Mallonee and O'Melveny & Myers opinions and decisions, a consolidated mandate covering both decisions (cases 12,511 and 12,591) was issued by this Court on May 21, 1953.[3] A petition for certiorari was filed

3.

No. 12511

No. 12591

United States Court of Appeals

For The Ninth Circuit

Home Loan Bank Board, et al., Appellants,
 vs.
Mallonee, Bucklin and Fergus, etc., et al., Appellees,
 and consolidated case
Federal Home Loan Bank of San Francisco, et al., No. 12511
 Appellants,
 vs.
Federal Home Loan Bank of Los Angeles, et al.,
 Appellees.

John H. Fahey, et al., Appellants,
 vs.
O'Melveny & Myers, et al., Appellees,
 and
Federal Home Loan Bank of San Francisco, No. 12591
 Appellant,
 vs.
O'Melveny & Myers, et al., Appellees.

Mandate

United States of America, SS:
The President of The United States
of America
To The Honorable, The Judges of The United States District Court For the Southern District of California, Central Division, Greeting:

Whereas, lately in the United States District Court for the Southern District of California, Central Division, before you or some of you, in consolidated causes between Mallonee, Bucklin and Fergus, et al, plaintiffs, third party plaintiffs and cross-claimants, and John H. Fahey, et al, defendants, Civil No. 5421–P.H.; and between Federal Home Loan Bank of Los Angeles, et al, plaintiffs, and Federal Home Loan Bank of San Francisco, et al, defendants, Civil No. 5678–P.H.; wherein an Order of Preliminary Injunction was duly filed,. and entered on the 2nd day of December, 1949, and wherein an Order re allowance of attorneys' fees on account was duly filed and entered on the 19th day of June, 1950; which said orders are of record and fully set out in said causes

in the office of the Clerk of the said District Court, to which record reference is hereby made and the same is hereby expressly made a part hereof.

And Whereas, the said John H. Fahey, et al, and said Federal Home Loan Bank of San Francisco have appealed to this Court as by the inspection of the transcript of the record of the said District Court, which was brought into the United States Court of Appeals for the Ninth Circuit by virtue of an appeal agreeably to the Act of Congress, in such cases made and provided, fully and at large appears.

And Whereas, on the 1st day of May, in the year of our Lord, one thousand nine hundred and fifty one, the said consolidated causes came on to be heard before the said United States Court of Appeals for the Ninth Circuit, on the said transcript of record, and was duly submitted.

And Whereas, on the 6th day of May, in the year of our Lord, one thousand nine hundred and fifty-two, the said consolidated causes came on to be heard

after a rehearing had been denied in (Mallonee) case No. 12,511, which petition was denied by the Supreme Court on May 4, 1953, Mallonee v. Fahey, 345 U.S. 952, 73 S.Ct. 863, 97 L.Ed. 1374. Rehearing was denied on June 8, 1953,

before the said United States Court of Appeals for the Ninth Circuit, on the said transcript of record, and was duly submitted.

And Whereas, said actions were consolidated in the District Court for all purposes, and a review of decisions in both said appeals was sought by appellees upon consolidated petitions for writs of certiorari to the United States Supreme Court, which said petitions were denied on the 4th day of May, 1953:

On Consideration Whereof, It is now here ordered and adjudged by this Court that the said orders of the said District Court in these consolidated causes be and hereby are reversed and that said consolidated causes be and hereby are remanded to the said District Court with directions to:

1. Dismiss Civil Action No. 5678–P.H. at the cost of plaintiffs.

2. Dismiss the following pleadings in Civil Action 5421–P.H.:

(a) The complaint of Mallonee, Bucklin and Fergus, and all amendments and supplements thereto, at the cost of said complainants;

(b) The cross-claim and third party complaint of Long Beach Federal Savings and Loan Association, and all amendments and supplements thereto, at the cost of third party complainant and cross-claimant;

(c) The cross-claim of Federal Home Loan Bank of Los Angeles, and all amendments and supplements thereto at the cost of said cross-claimant;

(d) The cross-claim in interpleader of Title Service Company, and all amendments and supplements thereto, at the cost of said cross-claimant;

(e) The cross-claim in interpleader, and all amendments and supplements thereto, of Robert H. Wallis, at the cost of said cross-claimant;

3. Dissolve, set aside and vacate the order of said District Court entered the 13th day of March, 1948, insofar as the same requires Federal Home Loan Bank of San Francisco to deposit in the Registry of said District Court promissory notes in the aggregate principal amount of $6,300,000.00, collateral securing the same and any other documents or property deposited by San Francisco Bank pursuant to said order; and return to Federal Home Loan Bank of San Francisco without charge or impairment said promissory notes, together with Govern-

ment bonds in the face amount of $5,-300,000.00 with all interest coupons attached thereto at the time of deposit and together with cash from the sum in the Registry of said Court sufficient to make the combined total sum of $6,324,098.35, with interest on $6,300,000.00 at 2% per annum from the 10th, day of March, 1948 until the date of such release.

4. Set aside and vacate said order of preliminary injunction entered the 2nd day of December, 1949.

YOU, THEREFORE, ARE HEREBY COMMANDED that such proceedings be had in said consolidated causes, in conformity with the opinions and judgments of this Court, as according to right and justice, and the laws of the United States, ought to be had, the said appeals notwithstanding.

Witness, the Honorable Fred H. Vinson, Chief Justice of the United States, the 21st day of May in the year of our Lord one thousand nine hundred and fifty three.

............................

Clerk, United States Court of Appeals For The Ninth Circuit.

In argument on the instant petition for relief, counsel for Respondent litigants voiced the following contentions as to the meaning these litigants ascribed to the language of the mandate and to the meaning of language in the "Housing Act of 1954":

"All that you said in your Mallonee opinion, in your Mallonee mandate was it was jurisdictional; to go exhaust administrative remedies."

In response to a question from the bench as to whether counsel thought that *all* that was decided by us in the original case (the Mallonee appeal, 196 F.2d 336) "was jurisdiction of the court to hear it," counsel replied "that is right— that summarizes our position."

As to certain *new actions* pending in the lower court, counsel stated that they were "filed under the Housing Act in express reliance, and process is being served thereunder." As to these new actions counsel also stated that "our new actions under the 'Housing Act of 1954' carry those changed conditions. *That* is the basis of the cases I have cited that your *mandate* based on an opinion in 1952 and issued in 1953 [consolidated mandate in Mallonee and O'Melveny & Myers cases] should not result in our be-

345 U.S. 978, 73 S.Ct. 1120, 97 L.Ed. 1393. Parenthetically, we point out that in the instant Return and Answer of Respondent litigants they argue that this mandate covering these two cases "is the only mandate enforcement of which is sought by petitioners' present writs."

As our Mallonee opinion (No. 12511) indicates, the court below had "consolidated" the Mallonee action (No. 5421 below) with the (later noted) Los Angeles action (No. 5678 below). However, our opinion was primarily and almost exclusively devoted to a consideration and disposal of the many issues presented in case No. 5421 below. In this opinion we deferred for possible later determination in any appeal to this Court the issues then pertinent only to the so-called Los Angeles action.

After our second opinion (No. 12591) in the O'Melveny & Myers case petitions for writs of certiorari to review our decisions in 12511 and 12591 were filed with the Supreme Court. Certiorari was denied on May 4, 1953, 345 U.S. 952, 73 S.Ct. 863, 97 L.Ed. 1374, rehearing denied June 8, 1953, 345 U.S. 978, 73 S.Ct. 1120, 97 L.Ed. 1393.[4] See our later com-

---

ing enjoined from the jurisdiction that Congress has expressly conferred [in the Housing Act] *or* from a defense on the merits in 13,979." (Emphasis ours.)

A question from the bench was directed to the above statement in which counsel was asked whether "even in the absence of any of the legislation [Housing Act] or in the presence of it, either way, you are entitled to go ahead with what you are attempting to do,". To this query counsel agreed that they were entitled to make a defense in the district court in the foreclosure action (No. 13979) *and to proceed with any affirmative action that they thought they should have in the proper jurisdiction.* We must assume that this means and includes any new (affirmative) proceedings in the lower court which will continue the litigation of issues presented by Respondent litigants at the very start of this long litigation (including the issues in the Los Angeles action). In the body of the opinion we note the institution of several new suits in which this sort of "affirmative action" is reflected. And see footnote 6 herein.

4. Our opinion (196 F.2d 336) dealing with the issues in these "consolidated cases" (Mallonee action and Los Angeles action) emphasizes the wide scope, complexity and close relationship of the many legal issues and claims tendered by the numerous parties who were brought within the orbit of, and became parties in, the so-called "Mallonee action" prior to the time the issues in that case reached this Court, one of these parties being the Federal Home Loan Bank of Los Angeles, along with six of its stockholding member Associations who joined with Los Angeles as party plaintiffs in its independent plenary action. Wilmington Federal Savings & Loan Association,

a stockholder member of the Federal Home Loan Bank of Los Angeles, was one of these six co-plaintiffs in the original "Los Angeles action."

We take judicial notice of the fact that several briefs were filed in the Supreme Court in the certiorari proceedings in which review of our decisions No. 12511 and No. 12591 was sought. Since our decision in the O'Melveny & Myers case dealt in no small part with the status of Federal Home Loan Banks and the System of which they are a part, the validity of our conclusions and holdings with respect to the relationship and obligations existing between Home Loan Banks and their stock-holding member Associations, were vigorously challenged. These briefs were filed in the October Term, 1952 and there numbered 591, 592, 593, 594, 595, 596 and 658.

One of these briefs (591) was filed by and on behalf of Long Beach Federal Savings and Loan Association *and* on behalf of the original plaintiffs in the so-called "Mallonee Case."

Another brief (592) was filed by and on behalf of Wilmington Federal Savings & Loan Association *and* W. I. Gilbert, and on behalf of Federal Home Loan Bank of Los Angeles, and its stockholders. (The record indicates that neither the Los Angeles Bank nor O'Melveny and Myers, its attorneys, nor five out of six original plaintiff member associations which had joined in the original Los Angeles Action (5678) were seeking review of our decision No. 12591 in this certiorari proceeding.)

It is highly significant, in that it reflects the views of the Mallonee-Association group of petitioners concerning the holdings of this Court, that in their petition for certiorari (No. 591) these litigants specifically represented to the Supreme

ment on the relationship of issues in the O'Melveny & Myers case to those in the Los Angeles action.

Our third opinion was in the Calverley case wherein it appears that issues in four other cases were also involved and disposed of. The issues posed in these five cases were so closely related to and intimately involved in the issues disposed of by our two previous opinions that they were literally part and parcel of the many issues decided in the opinions in these first two appeals, and particularly in our decision in the Mallonee case. A petition for certiorari in the Calverley case was denied by the Supreme Court on April 26, 1954, 347 U.S. 955, 74 S.Ct. 680, 98 L.Ed. 1100.[5]

Our opinion and judgment of November 23, 1953, in the five appeals in the Calverley case (Nos. 13,411, 13,558, 12,575, 12,893 and 13,055) dealt with appeals taken by petitioners herein from orders entered by the district court in the "consolidated actions" above referred to. In our opinion and judgment we reversed the various orders of the district court from which appeals had been taken, on the ground that the actions in which said orders were entered presented no justiciable controversy within the jurisdiction of the district court. As the district court noted (Mallonee v. Fahey, D.C., 117 F.Supp. 259, at page 292), a copy of this Court's opinion of November 23, 1953 was before it while its memorandum was being written, but the district court chose to disregard it because that opinion "is not final as neither the time for rehearing or certiorari has expired."

Mandates of this Court in the Calverley case were issued on May 4, 1954, pursuant to and in conformance with our decision in that case. Respondent District Court on June 8, 1954, following a hearing held on May 24, 1954, entered orders in the form proposed by petitioners in the instant proceeding. These orders vacated four interim orders awarding fees to the Special Master which were the subject of the appeals 12,575, 12,893 and 13,055; vacated the orders appointing a receiver and allowing the receiver costs which were the subject of appeals 13,411 and 13,558 and dismissed the cross-claim and the separate complaint filed by the receiver. Apparently all matters pertaining to the receivership have now been disposed of, or at least our attention has not been drawn to any residue of controversy over this matter. We later comment on an issue concerning payment of fees to the Special Master.

---

Court (p. 4 of petition) that "in 1952, the Court of Appeals *holds* it was error for the district court not to have dismissed the *actions* in 1946, holding the district court *was at all times wholly without jurisdiction of the subject matter*." Again, on page 17 of the brief of these petitioning parties they represented to the Supreme Court that in appeals 12,511 and 12,591 "such appeals resulted in *opinions* by the Court of Appeals in 1952, that the District Court *has at all times been without jurisdiction of the subject matter of the* [consolidated] *actions, and ordering dismissal (196 F.2d 336, at [page] 379, Op. in Appeal No. 12,511)*." (Emphasis ours.)

We wholly agree with the conclusions thus expressed in the brief of Association that this Court, in its opinion there referred to, ordered dismissal of these *actions* and we find no reason to part company with the conclusion of Association and its collaborating petitioners that dis-

missal of the *actions* had been ordered by this Court.

5. Our five several mandates issued pursuant to our said Calverley decision provided, inter alia, that cause number 13411 be, and hereby is, remanded to the court of Respondent District Judge with directions to that court to (1) vacate the (its) order appointing said receiver and filed and dated March 15, 1952; (2) dismiss the complaint filed by said receiver in the Superior Court of the State of California in and for the County of Los Angeles and thereafter removed to the said District Court being action 13,-952-P.H. in the files of said court; (3) dismiss the cross-claim filed by said receiver in consolidated actions 5421-P.H. and 5678-P.H. (the "consolidated actions" last mentioned were the consolidated actions considered and disposed of in our opinion and decision in the Mallonee case.)

### The Los Angeles Action

We digress to point out that the independent plenary action (No. 5678 below) instituted by the Federal Home Loan Bank of Los Angeles in August of 1946 was drawn within the orbit of and consolidated with the Mallonee case, which had previously been instituted in May of 1946. (See reference to the Los Angeles action on pages 341 and 343 of 196 F.2d of our opinion in the Mallonee case.) This action by Los Angeles Bank was therein referred to as the "Los Angeles action."

The issues tendered by plaintiffs in the Los Angeles action were never tried below on the merits, hence these issues were never directly before us for decision on an appeal in that case. However, the major and controlling issues tendered in the lower court by the pleadings of the plaintiffs in the original Los Angeles action, and particularly those dealing with the status of Federal Home Loan Banks, were subsequently before us and were necessarily considered and disposed of in our O'Melveny & Myers opinion. The appeal in the O'Melveny case arose out of a challenge by petitioners in the instant proceeding to the validity of an order in which the trial court granted attorneys' fees to counsel for Los Angeles Home Loan Bank. In our O'Melveny & Myers opinion (200 F.2d at page 481) we remanded the O'Melveny & Myers case to the lower court with directions to the lower court to dismiss the Los Angeles action. So much for the Los Angeles action.

Because of their vital bearing on the complicated issues now before us on the petition we feel obliged to burden this opinion by noting certain of the more important and highly significant procedural steps (including the filing of certain "new actions" in the lower court) following issuance of our mandate of May 21, 1953. While these events are far from a complete list they serve to point up with emphasis the unremitting efforts of Respondent litigants to relitigate, or to *continue* litigating, the same vital issues we considered and disposed of in our three noted decisions. See comments in footnotes 3 and 8 regarding expansion of the litigation.

This record also serves in small measure to make plain the extent of the onerous duties imposed upon Respondent District Judge who since early in 1946 has been compelled to wrestle with the incredible confusion growing out of innumerable problems being steadily thrust to the front in this continually expanding litigation. This burden has been added to the task of disposing of many other civil and criminal cases crowding the docket of his court since 1946.

As we shall later indicate, Respondent litigants rest, in part, the claim of right to pursue this course of renewed and continuing litigation on specific language appearing in the "Housing Act of 1954."[6]

6. Public Law 560, 83rd Congress, Chapter 649, 2nd Session, H.R. 7839. See 12 U.S.C.A. § 1464(d) (1) and 68 Stat. 648, § 818. Section 818 of the "Housing Act of 1954" appears in the code merely as an editorial note to Section 1703 of Title 12 U.S.C.A. and will be found on page 128 in the pamphlet supplement under the caption "Inconsistent Laws." The Act was approved on August 2, 1954.

The language principally relied on appears in Section 503 of said "Housing Act of 1954" in that part of the Act (Title V) relating to the "Home Loan Bank Board." In the argument before us, counsel for Respondent litigants carefully marked the particular language upon which they now rely to support their vigorous contention that by the use of such language Congress "has made moot all of the issues asserted in the petition of petitioners herein." This marked language, together with the language of Section 818 of said "Housing Act of 1954," which is also relied on, reads as follows:

"Upon the giving of notice of alleged violation of law or regulation as herein provided, either the Board or the association affected may, within thirty days after the service of said notice, apply to the United States district court for the district where the association is located for a declaratory judgment and an injunction or other relief with respect to such controversy, and said court shall

However, it should be emphasized that many proceedings in the continuous process antedate the effective date of that Act—August 2, 1954.

On May 25, 1953, petitioners presented to the said district court their motion (followed by a written motion served and filed about May 28, 1953) that the said mandate of May 21, 1953, be spread upon the records of the said district court and the judgment be entered pursuant thereto. Petitioners also presented to the said district court a form of order in the terms of this Court's mandate. The district court declined to spread said mandate or to take any action in connection therewith until June 24, 1953, when, upon further hearings, it ordered the mandate spread but continued to August 3, 1953, further consideration of the entry of orders on said mandate and directed petitioners herein to submit on or before July 17, 1953, a separate form of order as to each provision of our said mandate. Pursuant to such direction, petitioners, on July 16, 1953, filed 14 separate proposed orders. Oppositions and counter proposals were filed on or about August 3, 1953. Thereafter, at the suggestion of the district judge, petitioners filed a response to such oppositions wherein they requested an early disposition of the proceedings in accordance with the said mandate of this Court. With the sole exception of one order entered September 21, 1953, nothing further was done until October 12, 1953, when the lower court commenced a series of hearings lasting eight days at which arguments were heard on the proposed orders, upon requests for affirmative relief inconsistent with the opinions and mandate of this Court, and upon various motions filed in pending action 13979 (the above mentioned "note case," see footnote 2) which the district court considered to be interrelated with the said "consolidated actions." On November 30, 1953, the district court filed a memorandum of opinion on mandate (117 F. Supp. 259) indicating the court's intentions with respect to the orders to be entered.

Following the November 30, 1953 opinion on the mandate the said district court on December 11, 1953 entered orders dismissing the cross-claim of one Roy Hegg and the principal pleadings listed in the mandate. The district court, however, declined to enter judgment dismissing the so-called Los Angeles action. Likewise, it refused to enter orders vacating its prior orders relating to the accounting by the prior Conservator of Association (A. V. Ammann, whose status was discussed in our Mallonee opinion), refused to vacate its prior orders for inspection of the records of San Francisco Bank, dismissing the cross-claim of George Turner, dismissing the complaint and intervention of John D. Willhoit, denying the petition and supplement thereto of First Federal Savings and Loan Association of Bellflower to interplead stock subscriptions, and dismissing the purported petitions and interpleader in re insurance premiums payable to Federal Savings and Loan Insurance Corporation, all of which proceedings were ancillary to the main so-called "consolidated actions" (see Mallonee opinion) and none of which had an in-

have jurisdiction to adjudicate the same as in other cases and to enforce its orders. The Board may apply to the United States district court of the district where the association affected has its home office for the enforcement of any order of the Board and such court shall have power to enforce any such order which has become final. The Board shall be subject to suit by any Federal savings and loan association with respect to any matter under this section or regulations made thereunder, or any other law or regulation, in the United States district court for the district where the home office of such association is located, and may be served by serving a copy of process on any of its agents and mailing a copy of such process by registered mail, to the Home Loan Bank Board, Washington, District of Columbia." 12 U.S.C.A. § 1464(d) (1).

"Sec. 818. Insofar as the provisions of any other law are inconsistent with the provisions of this Act, the provisions of this Act shall be controlling." 12 U.S. C.A. § 1703 note.

dependent basis for federal jurisdiction. See this Court's Calverley opinion.

Notwithstanding the three above noted opinions of this Court holding the district court without power to proceed in the "consolidated actions," the district court undertook affirmative action *therein* when it directed a Special Master it had appointed to file a final report and request for fees (Mallonee v. Fahey, 117 F.Supp. at page 272), which matter was argued before the district court in January, 1954. But see Mallonee v. Fahey, D.C., 122 F.Supp. 472 re master's fees.

On January 22, 1954, the district court, on motions of Association and collaborating parties, entered an order in the "consolidated actions" substituting as parties defendant and cross-defendant certain of the so-called official defendants, i. e., present and former members of the Home Loan Bank Board, and in that order the said district court stated that *"substantial need for continuing and maintaining the above-entitled (consolidated) action was satisfactorily shown to this court."*

The mandate of this Court (footnote 3, supra) specifically directed the said district court to return to San Francisco Bank the promissory notes and collateral securing same. The district court on December 11, 1953, entered an order directing that such property be delivered to San Francisco Bank on December 22, 1953. But on December 21, 1953, upon the ex parte application of Association, the district court entered an order staying the enforcement of its said order of December 11, 1953, *upon the ground that an application had been made in the "related" and above mentioned "note case"* (13979) *for the retention of such property in the Registry of the court. Said stay is still in effect.*

It is clear that by this last mentioned order staying the enforcement of its delivery order of December 11, 1953, the lower court was subjecting the Bank's collateral to the final outcome of Action 13,979 without the consent of the Bank, thereby materially impairing the contract rights of the Bank. On June 10, 1954 the court rendered a memorandum opinion entitled and filed in *both* the "consolidated actions" and *note* case, 13979. This opinion consists of 90 pages, plus 58 pages of exhibits and is before us as an exhibit on this hearing. The length and complexity of the memorandum makes it impractical to summarize its contents. The order therein proposed by the lower court would substitute for the collateral now in the registry of the court (which San Francisco Bank is entitled to receive under our mandate) entirely new collateral of approximately $7,000,000 of United States Government Bonds. It would also impose on such substituted collateral conditions and restrictions to which the collateral was not subject at the time it was impounded by order of the district court. We view such a proposal as a direct violation of our mandate of May 21, 1953. We mention this matter because San Francisco Bank is entitled to be restored as nearly as possible to the status as a secured creditor of Association which it occupied prior to the impound and release of the individual borrowers' notes and deeds of trust. If this order is executed San Francisco Bank would be compelled to accept collateral to be selected by Association and the lower court. For nearly eight years Association has had on deposit in the Registry of the court approximately $1,500,000 in cash upon which no interest has been earned, and since December, 1947, the coupons attached to $5,300,000 of Government Bonds in the Registry of the court have not been cashed. This situation merely spells out a continuance of pre-existing conditions. Since March, 1948, San Francisco Bank has not received any interest on its notes of $6,300,-000 and the accumulated interest on such notes does not bear interest. The loss here noted has resulted solely from the acts of Association in obtaining the impound of the collateral security. These matters are to be kept in mind by reason of the fact that the mandate of this Court required that the bonds and cash in the Registry of the court should be returned to San Francisco Bank "without charge or impairment" and the dis-

trict court is without authority to charge the collateral with conditions which would materially reduce its value as collateral by creating a new contract between the parties which we think the court was without jurisdiction to make.

The lower court also obviously sought by its proposal to require the San Francisco Bank to give a form of receipt for the returned collateral which would restrict the *use* of the collateral to payment of the amount "finally adjudged to be due on the conservator's notes to San Francisco Bank * * * in Action 13,979 * * *." The practical effect of the proposed order of the district court limiting the *use* of the collateral would be to continue the existing impound of the collateral for an indefinite period of time and to destroy the Bank's collateral security altogether if for any reason action 13,979 should fail through some technicality. From all of this it appears that the force and effect of the mandate of this Court has been evaded to the extent noted by the process of entering a contradictory order in a related action involving the same parties.

And see Independent Nail & Packing Co. v. Perry, 7 Cir., 214 F.2d 670 (cited in footnote 10, infra) where the court held that the district court's order staying a judgment entered pursuant to a mandate from the court of appeals violated the mandate, and it issued a writ of mandamus to put its judgment into full force and effect.

We have indicated above why we do not here dispose of the *remand* issue in said "note case," but reference to this case is necessary because of the important bearing of that action (still pending in the lower court) on the issues before us. This "note case" was an action instituted on March 27, 1952 in a State court by San Francisco Bank against Association to recover judgment on the four notes delivered to that bank by A. V. Ammann while he was serving as Conservator of Association. These notes were given to evidence a loan to Associa-

tion which loan had been negotiated by Ammann, and the purpose of the suit in the State court was to recover judgment on these notes and to foreclose the impounded collateral securing the same. The suit was instituted pursuant to leave granted by this Court on March 25, 1952. These are the same notes and collateral which had originally been impounded by the district court *in the consolidated actions above mentioned* and which this Court's mandate of May 21, 1953 directed be returned to the San Francisco Bank. In the Mallonee action Association had directly challenged the validity of these notes and had sought their cancellation on the ground, among others, that they had been executed by a conservator whose appointment was void, notwithstanding the fact that the status of the Conservator had been settled by Fahey v. Mallonee, 332 U.S. 245, 67 S.Ct. 1552, 91 L.Ed. 2030, and Ex parte Fahey, 332 U.S. 258, 67 S.Ct. 1558, 91 L.Ed. 2041.

Upon petition of Association, said note action was removed to the district court, where it now bears number 13,979. San Francisco Bank moved to remand this action to the State court. On May 27, 1953, the lower court entered an order and opinion denying this motion.

By answer, cross-claim and third party complaint (filed in the "note case")[2] Association has injected into this "note case," and seeks to relitigate therein, *all* of the issues which have been litigated and in our view finally determined in our Mallonee opinion in the "consolidated cases." Its cross-claim and third party complaint are two pleadings so lengthy as to defy an attempt at any sort of reasonable analysis. They name as defendants and cross-defendants therein substantially all of the principal parties who had been named as cross-defendants in the original *consolidated actions*. They incorporate by reference and have attached thereto as exhibits, the pleadings filed by Association in the original "consolidated actions." They also name as

2. See note 2 on page 353.

party defendants the huge army of Does to which we have made reference in Footnote 2. For example, each of the prayers for relief in the cross-claim and third party complaint contains the following:

"All prayers for relief in *all* former pleadings, cross-claims, petitions, motions, answers, complaints, *all* other documents filed by this third party plaintiff in said action 5421–5678–7989–P.H. *are hereby incorporated herein by reference and made a part hereof as if herein set forth at length,* except as to matters previously granted to this third party plaintiff by final judgments and orders of the Court." (See footnote 3.)

One of the many prayers for relief in the said cross-claim of Association reads as follows:

"Reincorporating of all prayers for relief from former pleadings.

"*All* prayers for relief in all former pleadings, cross-claims, petitions, motions, answers, complaints, or other documents, filed by this cross-claimant in said Action Nos. 5421, 5678, 7989–P.H., *are hereby incorporated herein by reference and made a part hereof the same as if set forth herein at length.*" (Emphasis ours.)

Counsel for Respondent litigants frankly stated in argument before us on the instant petition that an issue his clients want to try all over again in action 13,979 is the *validity* of the *seizure* of the assets of Los Angeles Bank when these assets were transferred to San Francisco Bank. The claim that Los Angeles Bank had been "unlawfully seized" was one of the principal issues considered and disposed of adversely to that claim in our O'Melveny & Myers opinion, supra.

In addition to the foregoing mentioned answer, cross-claim and third party complaint filed in the note case, Association also filed an "answer" (on October 13, 1952) to the complaint of San Francisco Bank in the note case. The answer is very lengthy and we do not burden this opinion with a recital of its many allegations, but we think it desirable to note that in the demand for relief in this pleading Association prays that the lower court order its clerk to cancel and nullify the (four) promissory notes which were the basis of the suit of San Francisco Bank. Association further prays that the lower court adjudge and decree that said Association "is under no liability or obligation of any nature whatsoever, either because of, or by reason of, said notes or otherwise to said purported San Francisco Bank or any of said cross-defendants."

Here again is an undisguised frontal attack on the *authority* of Conservator Ammann to execute the four notes of Association which of course also constitutes a challenge to, and a denial of, the *validity* of his appointment as Conservator of Association back in 1946.

In connection with the foregoing references to prayers for relief we again note that action No. 5421 was the original "Mallonee action" and action No. 5678 was the original "Los Angeles action" both being instituted at the beginning of this litigation early in 1946.

Cross-claims filed in the "note action" (No. 13,979) by Title Service Company and Robert H. Wallis also seek the *identical relief* sought by them in the original "consolidated actions," and incorporate by reference and have attached as exhibits all of the pleadings filed by them in the said "consolidated actions." These two cross-claims of Title Service and Wallis (filed as "proposed" complaints) also named as defendants apparently all of the defendants named in the complaints of Association to which we refer in footnote 2 herein, including the eight thousand "Does" sued by Association.

Following our O'Melveny & Myers opinion San Francisco Bank filed in the said "note action" 13,979 in June, 1953, motions to strike and to dismiss the cross-claims and third party complaint filed by Association and collaborating parties on the ground, among others, that said pleadings seek to relitigate issues which this Court in the "consolidated actions" had determined were beyond the power of the district court to

entertain. These motions were opposed and after several continuances were finally heard by the district court in conjunction with the arguments on forms of orders on mandate in an eight day series of hearings commencing October 12, 1953. We are not advised that any decision on these motions has yet been rendered.

Association, in response to the district court's apparent suggestion in its opinion on mandate of November 30, 1953 (Mallonee v. Fahey, 117 F.Supp. at pages 289, 292), filed in the said "note case" on December 21, 1953, a "Motion for Retention of $14,000,000 of U. S. Bonds, Cash, etc., in Registry of Court in Foreclosure Actions" seeking in effect to prevent delivery to San Francisco Bank of the notes and collateral on deposit in court, the return of which had been directed by this Court's mandate of May 21, 1953, in the "consolidated cases." The district court thereupon issued on December 21, 1953, an order returnable January 11, 1954, to show cause why the relief requested in the motion should not be granted. Response was made by San Francisco Bank opposing the motion. So far as we are advised, the motion is still pending and undetermined. By failing to dispose of this motion in the "note case" the district court has maintained in full effect its stay entered in the

"consolidated cases" suspending the delivery of the said notes and collateral to the San Francisco Bank.[7] We have heretofore commented at some length on this stay procedure.

New Action No. 15,588

On June 5, 1953, Association filed another action (No. 15,588) in the lower court naming as defendants therein all the principal parties who had been cross-defendants in the original "consolidated actions." In the complaint, a copy of which is before us as an "exhibit," Association repeats allegations made by it in cross-claims in the original "consolidated actions" and seeks to relitigate issues heretofore considered and adjudicated by this Court in our opinion in the said "consolidated actions." We are advised that Association has so far withheld service of process in this pending action although orders of substitution of certain parties defendant have been entered therein on January 22, 1954. The complaint in 15,588 is one in interpleader and for declaratory relief. It names as defendants the various parties who had been named as defendants in the two new actions referred to in Footnote 2, supra, including the 8,000 unidentified Does referred to in that footnote.

In their brief filed in the instant show cause proceeding Respondent litigants, in resisting the granting of the fifth

7. In the reported opinion in Mallonee v. Fahey, D.C., 117 F.Supp. 259, 283 the lower court sets forth that the complaint of San Francisco Bank in No. 13,979 appears to be a complaint to foreclose a lien upon the United States Bonds and all of the individual borrowers' notes and trust deeds securing them (about 6000 separate trust deeds and notes) which had been ordered impounded in the Registry of the court by an order of March 13, 1948. The court here observes that these individual borrowers' notes and trust deeds were later delivered to Association pursuant to an order of court dated March 26, 1948, and to the date of the opinion (November 30, 1953) about 1700 of them had been paid in full. And see pp. 283, 284, of this opinion for details concerning the impound of the bonds and notes.

And see further comment of the lower court in Federal Home Loan Bank of San Francisco v. Long Beach Federal Savings & Loan Ass'n, D.C., 122 F.Supp. 401, 445, 446 referring to the impound of bonds, cash, notes and trust deeds, and the (then) payment by borrowers from Association of more than 2000 of the loans to secure payment of which these notes and trust deeds had been given.

Reference is made to these notes and trust deeds because they are clearly embraced within the orbit and meaning of a "disclaimer" filed by San Francisco Bank in action No. 13,979 in which document the Bank disclaims any and all right, title or interest in the real property subject to the lien of these notes and trust deeds. We refer to this disclaimer of San Francisco Bank at a later point in our opinion.

prayer of the petition which involves action 15,588, frankly argue to us that:

"Petitioners seek to prevent any trial of the merits of action No. 15,588, untried and unheard in either trial or appellate courts, *because* in said action Respondent Association ' * * * reasserted claims previously made in [all of] its various pleadings *in the consolidated actions * * * '*. The pleadings so referred to were those filed in 1946 and ordered dismissed by the Court of Appeals for failure to then [in 1946], exhaust administrative remedies. Action No. 15,-588 was filed seven years later in June, 1953." (Emphasis ours.)

As to this action, Respondent litigants further state in their brief that "it [the complaint] was amended in August, 1954, to utilize the express jurisdiction conferred on respondent District Court by the Housing Act of 1954."

In addition to this argument, Respondent litigants also assert in their brief that petitioners herein are presently defendants in two *consolidated actions* in the United States District Court (Nos. 5421–5678). These two actions were the ones instituted by the Mallonee group *and* Los Angeles Bank early in 1946, and this argument makes abundantly plain that Respondent litigants are aggressively contending that *both* of these original 1946 actions are still pending in the lower court for relitigation despite anything said in the above noted three opinions of this Court (and mandates thereon). During oral argument on petition of petitioners herein, counsel for Respondent litigants referred to (and later filed with us as an exhibit) a "joint reply" of plaintiffs and cross-claimants which was captioned and filed in the original Mallonee action 5421. This pleading was filed in the lower court on November 26, 1954. It was a reply to the opposition of petitioners herein to motions of Respondent litigants to *amend* their pleadings in that original action to show present jurisdiction of the lower court of action 5421 *under* the noted provisions of the Housing Act of 1954.

In the complaint of Association in 15,-588 it denies (and attacks) the *validity* of the 1946 appointment of Ammann as Conservator of Association and the *validity* of the $7,000,000 loan made by San Francisco Bank to Association while Ammann was serving as its Conservator. Association also denies for itself, and on behalf of the original Mallonee litigants, all liability upon the debt owing to San Francisco Bank by Association. (This debt is the subject of the "note case," 13,979.)

The lower court also makes abundantly plain in its opinion in Mallonee v. Fahey, D.C., 117 F.Supp. 259, 275, that Association was then challenging the *validity* of the appointment of the Conservator back in 1946 by pointing out that Association is still asserting that the validity of this appointment "has not yet been, determined on the merits, either by administrative hearing or judicial proceedings in review thereof."

So much for Action No. 15,588.

In addition to the various pleadings filed in the "note case" *and* in action No. 15,588, Association has, since the filing of the petition of petitioners herein, filed in the court below complaints in four new actions which we note at this point. (And see reference to these "new actions" in footnote 3.)

A complaint (61 pages, plus exhibits) filed August 27, 1954, in new action 17,-133, which includes among the named defendants practically all the defendants in original Mallonee action 5421, and which alleges that it involves the same parties, issues and subject matter as action 5421. The complaint was for interpleader, quiet title and declaratory relief. *On the same day Association filed notice of pendency of 8 other related cases.*

A complaint (62 pages, plus exhibits) filed August 31, 1954, in new action 17,-152, designated a complaint in interpleader and for declaratory relief re federal insurance of savings deposits and the $7,000,000 denied debt, and naming,

among parties defendant, Home Loan Bank of San Francisco, Home Loan Bank of Portland, Home Loan Bank of Los Angeles, Utley as Receiver, Calverley as Receiver, and *all parties heretofore designated as official defendants*. This complaint attacks the status of San Francisco Bank, the validity of Ammann's appointment and the loan by this Bank to Association (the subject of the note case).

A complaint (82 pages) filed August 31, 1954 in new action No. 17,153 naming the same defendants as those above noted in action No. 17,152 and seeking interpleader, declaratory relief and injunctive relief and money for attorneys' fees to defend against foreclosure (in the "note case"), seizure and confiscation of Long Beach Association. The complaint in this action attacks the order of the Federal Home Loan Bank Board appointing a conservator for Association back in 1946, and the declaratory relief it seeks is based on the claims made in the original consolidated actions of 1946 (No. 5421, Mallonee case, and No. 5678, Los Angeles action) and also on all litigation then pending (including No. 13,-979).

A complaint filed August 31, 1954 in new action 17,154 (naming the defendants as those noted in action 17,152) purportedly brought under the Housing Act of 1954, and seeking return of collateral now in the Registry of the Court, an accounting, cancellation of San Francisco Bank notes, and to quiet title to plaintiff's money. This action also seeks judicial review and nullification of *all* administrative orders of the Home Loan Bank Board (including "administration"), (1) appointing the conservator in 1946, (2) terminating his appointment in 1948, and (3) for the administrative hearing in 1949, which respondents enjoined, which injunction this Court reversed in appeal 12,511 (196 F.2d 336). The complaint (122 pages) also demands money damages and the "enforcement" of all judgments and orders from which no specific appeal has been taken and made in 5421 (Mallonee action), 5678

(Los Angeles action), 7989 (Newendorp action), 13,953 (receiver action) and 13,-979 (note case), and for attorneys' fees and other relief. On the date of filing this complaint Association also filed notice of pending of five other "related cases" (referring to consolidated cases, note case, receiver's dismissed action— 13,953—and action 15,588) upon which order for transfer of above noted cases 17,152, 17,153 and 17,154 was ordered.

In each of these four additional actions (above noted) Association designated by name a veritable army of defendants, and in addition thereto joined as defendants 8,000 unidentified Does. As is true of so many of the pleadings in the various actions we have mentioned, the pleadings in these four actions are so lengthy and cover so many phases of the litigation that even an attempt at a summary could not be justified.

We here note that two additional appeals to this Court growing out of note case 13,979 have recently been filed. They are numbered 14,632 and 14,587 on the docket of this Court. The record in No. 14,632 (filed January 20, 1955) has not yet been lodged with this Court. The record in No. 14,587 has been lodged but is so enormous as to forbid an attempt to summarize the issues tendered on that appeal. They involve many parties to the litigation.

In addition to the pleadings filed in the note case and in action 15,588, Respondent litigants have, since the filing of the petition of petitioners herein, filed in the lower court additional motions, pleadings and actions as follows:

In Action 5678 (the Los Angeles action) the lower court entered an order on July 22, 1954 in which it ordered and adjudged that this action was severed from Action 5421 and was no longer consolidated with 5421. It further ordered and adjudged therein that Action 5678 "shall be, and it is hereby dismissed for lack of jurisdiction * * *." Thereafter, and on or about August 2, 1954, a motion was filed by First Federal Savings and Loan Association of Wil-

mington, Association and First Federal Savings and Loan Association of Bellflower for partial new trial in 5678 and to set aside the dismissal of Los Angeles action No. 5678 under the aforesaid order of dismissal dated July 22, 1954. This motion was noticed for hearing October, 1954. On November 12, 1954 the lower court entered an order which, inter alia, denied the aforesaid motion for parital new trial and to set aside the order dismissing the Los Angeles action. The Los Angeles action thus stands dismissed by the order of July 22, 1954. Reference is made to this adjudication of dismissal of the Los Angeles action by reason of the prayer (paragraph 1) in the petition before us for an order of this Court dismissing this action. Such action by this Court is no longer necessary.

In original Mallonee action 5421, a motion was filed August 30, 1954, for leave to amend to state jurisdiction. This motion seeks to replead and relitigate the third party complaint and cross-claims of Association and collaborating parties which were ordered dismissed by paragraph 2 of this Court's mandate of May 21, 1953. It was noticed for hearing November 29, 1954.

In original Mallonee action 5421, a complaint and application for declaratory judgment, injunction, and other relief was filed on August 30, 1954. This complaint was purportedly filed under the Housing Act of 1954 and incorporates by reference *all* the pleadings heretofore filed by Respondent parties in original action 5421, including specifically the prayers for relief contained in *all* such pleadings.

In action 15,588 an amended complaint was filed August 30, 1954, which is substantially the same in form, substance, and relief sought as the complaint filed on the same date in action 5421, noted in the paragraph above.

The foregoing enumeration is far from a complete showing of the large number of recent actions and proceedings in this now hopelessly tangled web of litigation, but it serves to indicate the clear and inevitable course the litigation is taking. The large number of collaborating Respondent litigants have been and are continuing to introduce into the stream of the litigation a veritable flood of pleadings in new actions wherein they stoutly reassert contentions advanced by them in the earliest stage of the controversy. The great length and repetitious nature of these pleadings has become a marked characteristic of the litigation in its present form.

As we pointed out (footnote 3) Respondent litigants vigorously assert that they are entitled "to go ahead with what you [they] are attempting to do," and further, that they are entitled to "proceed with *any* affirmative action that they thought they should have in the proper jurisdiction." These are frank avowals and leave nothing to guesswork as to what they are now doing, and what they intend to continue doing in further complicating litigation which started in 1946.[8] Our comments on action 15,588

8. Some interesting sidelights on the size of the record (June 29, 1954) appear in the comments of Respondent District Judge in his opinion reported in Federal Home Loan Bank of San Francisco v. Long Beach Federal Savings & Loan Ass'n, 122 F.Supp. 401, 407. His opening statement in this opinion is enlightening. He there states: "This *octopean litigation* is again before the Court in connection with the subject matter of eleven undecided matters *in* case No. 13979." On page 408 of this opinion the judge made this further enlightening comment: "Any consideration of any of said [11] matters must be had in the light of proceedings heretofore in it and related matters, *(actually about 60 different lawsuits under only three numbers), only a portion of which have found their way into the reports.*" To this appraisal the court appends the citation of the various reported cases dealing with this litigation and further observed (on page 408) that "it would be well to describe at this point the situation giving rise to that phase of this, and related, litigation *which long ago reached the quagmire stage.*" (Emphasis ours.)

With new cases being rapidly filed in which all of the old issues of 1946 are revived and asserted to be now open (or

in its relationship to the issues present in every phase of this controversy emphasize a situation that can and will produce litigation extending over many years to come.

If further doubt remained concerning the intention of Respondent litigants to continue litigating all of the issues posed in 1946, it was completely dissipated by a frank contention in their brief that "in action 5421 [the original Mallonee action] there are many other independent cross-actions, interpleaders and interventions, unaffected by the prior judgments or mandates." Among these are a cross-claim in interpleader of George Turner; a complaint in intervention of John D. Willhoit; a cross-claim in interpleader of First Federal Savings and Loan Association of Bellflower; a complaint in intervention of Home Investment Company to clear titles to 174 homes by a deposit of $800,000 in court; and 50 additional home owners' interpleader interventions depositing hundreds of thousands of dollars in court to clear titles to 480 homes. (See our later comment on a "disclaimer" by San Francisco Bank of any claims it might have against the real property here referred to in the two last noted interventions.)

We have herein referred to the fact that in at least one of the "new actions" there is a prayer for declaratory relief

reopened) for adjudication, it is certain that the problems now present will multiply until they outrun the capacity of the courts to bring any sort of order out of the chaos and confusion thus being engendered. At the present time the bulk of the records makes it utterly impossible to adequately describe the scope of, and the demands voiced in pleadings in the many actions now in the files of this and the lower court. As a matter of fact it is almost impossible to locate certain motions, orders or pleadings in the vast array of records in this litigation. In truth and in fact it has absorbed unto itself the peculiar expanding characteristics of a Banyan tree. In argument on the petition, counsel for Respondent litigants frankly characterized it as "already fantastic," and we have pointed up in our opinions that its unique and unprecedented pattern is without a counterpart in the books. No reported case or controversy has been called to our attention which even remotely resembles it.

In our Mallonee opinion (196 F.2d 336, at page 369) of April 2, 1952, we were required for the first time to examine the full record which even then was reaching appalling proportions. We there pointed out that the litigation had brought within its orbit fifteen proceedings in state and federal courts. We amplify that comment by noting here that the United States Supreme Court has written two opinions in the matter and has denied nine petitions for certiorari of Long Beach and collaborating parties. This Court has already considered seven appeals and has rendered three opinions of which the first two exhaustively treated every phase of the litigation and recognized the complexities with which the case has been interlarded. Notwithstanding the painstaking examination of the many contentions made by Long Beach and their rejection in the three opinions of this Court, the litigation continues to expand with the same contentions being still urged either in the consolidated or in some "related case," or in some new case with a different caption but involving all of the essential elements and vital issues of the same old 1946 controversy between the same parties, a controversy that up to this time has commanded the attention of the courts for nine years.

Small wonder that several years ago one of the great lawyers of the West Coast expressed sympathy for court and counsel who were called upon to wrestle with the "extremely complicated and unique" problems in the litigation (in its 1950 posture). See footnote 2 of O'Melveny & Myers opinion [200 F.2d 427] where he spoke of the fact that at that stage to meet the legal problems would "'tax * * * anybody's legal ingenuity.'" The lower court also emphasizes what Judge Morrow had to say. See his comment in Mallonee v. Fahey, D.C., 122 F.Supp. 472, 480.

It is our considered judgment that it would be impossible to find in the books a more unique, confusing and extraordinary pattern of litigation or one more shot through and through with "exceptional circumstances." Counsel for Respondent litigants was modestly restrained when he characterized the present record as "fantastic." The cold fact is that its astounding proliferations have finally created a record of overwhelming and unmanageable size.

as to *all issues raised in the original "consolidated actions"* and in the note action the prayer for relief incorporates all the prayers for relief in *all* former pleadings *in the consolidated actions.* Thus the current complaints on their face tender as issues every issue passed on by this Court (and later before the Supreme Court on certiorari) in the "consolidated actions" covered by our opinions therein and by our mandate of May 21, 1953.

■ Early in this opinion we adverted to the fact that beginning with October 12, 1953, the lower court commenced a series of hearings lasting eight days upon request for affirmative relief inconsistent with the opinions and mandate of this Court issued in the consolidated cases on May 21, 1953. An examination of the transcript covering the eight days of hearings (a copy of which is before us) will disclose that much of the time was there devoted to arguments that this Court *erred in its mandate.* If arguments of this character had any merit whatever they should have been (but were not) addressed to this Court.[9]

The district court's opinion on mandate, reported in Mallonee v. Fahey, 117 F.Supp. 259, indicates that further delays would be encountered in the complete termination of the original "consolidated actions." Such delays in fact occurred. It will be observed from an examination of the lower court's said opinion (117 F.Supp. at page 266) that counsel for petitioners herein were criticized by the lower court and opposing counsel for seeking to have that court act with alleged undue haste in giving effect to our said mandate. On this page of its reported opinion the lower court makes note of the then enormous size of the record. The court there pointed out

that at the time the mandate was offered for spreading there was still pending and undecided a petition for rehearing before the Supreme Court. (The petition for rehearing was denied by the Supreme Court on June 9, 1953, 345 U.S. 978, 73 S.Ct. 1120, 97 L.Ed. 1393 and the lower court indicates that this fact was not brought to its attention until some time later.) Several times the suggestion was made that no harm would be done by delaying entry of orders on our mandate to permit further hearings and consideration of collateral matters. (117 F.Supp. at pages 272, 278.)

Incidentally it will be noted from the lower court's opinion (at page 270) that the court entertained no doubt concerning its duty in connection with the mandate. It frankly states that the duty of the court was to carry out the mandate "without attempting to question the correctness of either the appellate court's opinion or decision or the correctness of the mandate." It held that the duty of the lower court was to recognize the mandate as completely controlling as to all matters within its compass. It went on to state, however, that on remand the trial court is free to pass upon any *issue which was not expressly or impliedly disposed of on appeal.*

■ As to the duty of the lower court to consider and give due weight to the holdings in the opinions of this Court, we refer to the views it expressed in reference to such holdings. In its opinion in Mallonee v. Fahey, 117 F.Supp. 259, 266, the court adverted to its lack of opportunity "to again read and study the opinions of the Appellate Court and *in light of them* endeavor to make such orders *as in conformity with them*[10] and

---

9. John Simmons Co. v. Grier Bros. Co., 258 U.S. 82, 91, 42 S.Ct. 196, 66 L.Ed. 475; Rogers v. Consolidated Rock Products Co., 9 Cir., 114 F.2d 108, 111; Rothschild & Co. v. Marshall, 9 Cir., 51 F.2d 897, 899. Respondent litigants point out in one of their briefs that none of the parties to the litigation has sought amendment, modification, or change "in

that judgment" (referring to our Mallonee opinion).

10. In a recent hearing in this Court, in which the writer participated, there was under discussion the weight properly to be given to an opinion of this Court and the mandate thereon. In passing upon this question the district judge (who is Respondent District Judge in the instant

according to right and justice and the laws of the United States ought to be had * * *." And again at page 270 of this opinion the lower court stated: "There can be no doubt concerning the duty of this court in connection with the

proceeding) stated a principle which we regard as hornbook law by expressing the view that "the mandate there says according to the opinion, and all of the cases say that the opinion is part of the mandate." In enunciating this doctrine the court was merely voicing a rule long established in the decisions that the opinion of an appellate court is deemed to be incorporated in and become a part of the mandate issued pursuant to that opinion.

Long ago the Clerk of this Court (in the third edition of his Manual of Federal Appellate Procedure) pointed out (pp. 240, 241, 242) that the opinion and decree of an appellate court is final and conclusive in every point actually decided, and a direction to proceed in the trial court "in accordance with the opinion of the appellate court" has the effect of making the opinion a part of the mandate. He cites the Gulf Refining case [Gulf Refining Co. v. United States], 269 U.S. 125, 135, 46 S.Ct. 52, 70 L.Ed. 195, noted below.

The lower court was quite correct in recognizing and giving application to this principle. We also set out a brief reference to a number of holdings of appellate courts dealing with the above noted principle and further indicating that their mandates must be *construed* in the light of their opinions.

Counsel appearing at the hearing on the instant petition on behalf of Respondent District Judge made plain his view that the District Judge was justified in looking principally to the language of our mandate of May 21, 1953 for guidance; that there was no need for the Judge to resort to our opinions since they only directed dismissal of one action (No. 5678, Los Angeles action) and pleadings in another action (5421, Mallonee action). He agreed that it was "generally true" that expressions in an opinion were not "meaningless," and that an appellate court must interpret its own mandate. As respects the delivery of impounded funds to San Francisco Bank (under our mandate) he agreed that if when deposited in the registry of the lower court, the impounded property (here involved) was *then* burdened with any claims, defenses or infirmities, this court did not *intend*, by the use of language in its mandate reading "without charge or impairment," to wipe out such "burden" and permit San Francisco Bank

to unconditionally get back these funds without receiving them subject to such prior "infirmities," and that *this* was the meaning the lower court attributed to our mandate.

Predicated on what we regard as a wholly untenable assumption regarding our "meaning" and "intent" (as expressed in the mandate) the lower court ordered the "reimpound," or "transfer" of the impounded funds to action No. 13,979 in which action Association is now directly challenging the right of San Francisco Bank to receive delivery of the funds as we directed in our mandate. It is sufficient to say that the lower court erred when, as above noted, it attributed to our mandate a meaning and *intent* not shared in any degree by this Court. Our view is directly to the contrary.

There is ample precedent in the cases to sustain the principle that an opinion of an appellate court is to be consulted to ascertain what was intended by its mandate and that *questions* considered and decided in the opinion of the court are not to be reexamined in any subsequent stage of the same case. The substance of controlling opinions clearly points up that the opinion is part of the mandate and that proceedings on the mandate in the court below must be in conformity with the opinions and judgment of the appellate court. It is clear also from the theory enunciated in these controlling cases that where an appellate court in its mandate prescribes that the lower court should "proceed in accordance with the opinion," this pronouncement operates to make the opinion a part of the mandate as completely as though the opinion had been set out at length. The construction of the intent and meaning of an opinion of the appellate court is not a matter for the exercise of judicial discretion by the court to which the mandate is directed. Respecting application of the foregoing principles see such cases as Gaines v. Rugg, 148 U.S. 228, 73 S.Ct. 611, 37 L.Ed. 432; In re Sanford Fork & Tool Co., 160 U.S. 247, 16 S. Ct. 291, 40 L.Ed. 414; Metropolitan Water Co. v. Kaw Valley, etc., 223 U.S. 519, 32 S.Ct. 246, 56 L.Ed. 533; Gulf Refining Co. v. United States, 269 U.S. 125, 46 S.Ct. 52, 70 L.Ed. 195; Rogers v. Hill, 289 U.S. 582, 53 S.Ct. 731, 77 L. Ed. 1385; Christoffel v. United States, D.C.Cir., 214 F.2d 265; Ohio Oil Co. v. Thompson, 8 Cir., 120 F.2d 831, certio-

mandate. It was ordered spread and under the decisions it is my duty to carry it out without attempting *to question the correctness of either the appellate court's opinion or decision or the correctness of the mandate.*" And again at page 273, the lower court stated: "*As indicated, the opinion of the appellate court was carefully prepared and likewise the mandate.*" On the same page of the opinion it refers to "certain occasional phrases in the opinion in 12511" respecting lack of jurisdiction of action 5421 (Mallonee case). Again at page 275 of the opinion the lower court stated: "I therefore conclude that from the two opinions and the mandate [consolidated mandate of May 21, 1953] that the appellate court did not *intend* that action 5421 should be dismissed." (The emphasis in these quotations is ours.)

At a later point in the opinion we shall refer to specific holdings set out in the opinions of this Court which the lower court is here discussing.

### The Basic Issues

At the hearing on the instant petition the fundamental issues for consideration were given a thorough airing and clearly delineated by argument and by references of counsel to pertinent parts of this complicated record. As we understand the argument of Respondent litigants it is that our opinions and decisions *failed to decide any of the vital and material* issues in the *entire* litigation, and that they have a right to prolong all aspects of the litigation by relying on their pleadings in the original Mallonee action, with amendments to show jurisdiction under the Housing Act of 1954, and upon the allegations in the pleadings in the "new actions" we have noted, with jurisdiction also resting on the cited language of the said Housing Act. On this theory there must be complete relitigation of *all* of the issues present during and since the early stages of the entire controversy (including the issues in the Los Angeles action and the issues disposed of in our O'Melveny & Myers opinion). Two basic contentions are wrapped up in this theory, and briefly stated they are (1) that our Mallonee opinion really decided nothing except a jurisdictional point coupled with a requirement as to exhaustion of tendered administrative remedies, (see footnote 3) and (2) that certain specified language in the Housing Act of 1954 (see footnote 6) "amend or repeal the basic sections of the Home Loan Bank law upon which the petition for writ, *and all prior opinions* of the Court of Appeals were founded." Grounding their case firmly on this postulate these litigants assert that the cited provisions of this Act have "made *all issues* of Petition for Mandamus, Injunction, etc., Moot"; that the Act "is immediately applicable to these pending writ proceedings, and to all pending litigation in the District Court · * * * [that] timely motions for new trial and motions to amend pleadings to show jurisdiction, based, among other grounds, upon the Housing Act, are pending, and yet undecided before the District Court. Also

---

rari denied 314 U.S. 658, 62 S.Ct. 112, 86 L.Ed. 528; Independent Nail & Packing Co. v. Perry, 7 Cir., 214 F.2d 670; H. P. Coffee Co. v. Reid, Murdoch & Co., 8 Cir., 60 F.2d 387; Mortgage Loan Co. v. Livingston, 8 Cir., 66 F.2d 636; Ex parte Union Steamboat Co., 178 U.S. 317, 20 S. Ct. 904, 44 L.Ed. 1084.

At an early date (1838) the Supreme Court announced a rule which has never been abandoned. In Ex parte Sibbald v. United States, 12 Pet. 488, 491, 493, 9 L. Ed. 1167, it had this to say: "Whatever was before the court, and is disposed of, is considered as finally settled. The inferior court is bound by *the decree* as the law of the case; and must carry *it* into execution, according to the mandate. They cannot vary *it*, or examine *it* for any other purpose than execution; nor give any other or further relief; nor review *it* upon any matter decided on appeal, for error apparent; nor intermeddle with *it*, further than to settle so much as has been remanded." (Emphasis ours.)

Other phases of the problem where *decisions* of the reviewing court are involved are considered in Butcher & Sherrerd v. Welsh, 3 Cir., 206 F.2d 259; In re United States, 5 Cir., 207 F.2d 567.

new actions, filed after [its] enactment, and under [its] express terms are in customary process of coming before the trial court for hearing." (Emphasis ours.)

In oral argument counsel also urged that "the new actions" are filed under, and with "express reliance on, the said Housing Act." As to the legal effect of the Congressional language in the Housing Act of 1954, it was urged that it is our duty to agree with his conclusions because "I think *this* [Section 818 (see footnote 6)] is the most sweeping *general application language* that could be *incorporated into a considered Act of Congress.*" (Emphasis ours.)

In a brief filed by Respondent litigants they argue that the "remedial curative" language of the amendment relied on "was enacted [among other reasons] to remedy the glaring defects in statutory law disclosed by the Court of Appeals opinions * * * [and petitioners] persist in their attempts *to enforce the now repealed statutes*" by demanding mandamus and injunction to prevent the District Court from hearing amendments to pending actions, including "new actions" commenced in August, 1954 under the "original jurisdiction" and under rights conferred in the Housing Act. Thus a "new situation" exists which must be considered by the District Court, and enjoining respondents would "subvert the spirit of the three prior opinions" of this Court. They further urged that "all these [above noted] occurrences *since* the filing of said petition for writs, renders consideration thereof *now*, wholly inappropriate; [that] the Court of Appeals will be faced with complicated issues of fact requiring weeks of testimony, and with application of entirely new law * * * to facts and pleadings subsequent to the record on prior appeals which closed four years ago [June 1950]." (Emphasis ours.)

Upon the basis of the argument just above noted we are urged to hold that the specific language used in the Housing Act which Housing Act amended the Home Loan Bank law, makes the Bank law (as so amended) *retroactive* in character and effect and thus applicable to *every phase* and period of the long litigation with which we here deal despite the fact that the vital issues in this litigation have been the subject of many past decisions of this Court and of the Supreme Court. It is urged that this *amending language* clearly reveals a Congressional intent and purpose to declare by statute that *all of the original actions* in this extensive litigation must now be regarded as "still pending" in the lower court, hence *all* of the vital issues posed therein since the inception of the litigation must be relitigated and/or adjudicated in the lower court. Upon this assumption it is argued that we should not enjoin the exercise of the (therein) "expressly conferred jurisdiction" of the lower court to now decide all of these "pending cases" on the merits.

We think that our appraisal fairly summarizes the basic issues as reflected in the arguments of Respondent litigants.

All of the foregoing arguments of litigants would seem to be predicated upon the assumption (and burdened with its necessary corollary) that the cited language in the Housing Act swept into the discard the principle of res judicata which from time immemorial has attached to decisional holdings in opinions of federal courts on questions of law and fact. But counsel for Respondent litigants will not take that advanced position and on this point carefully narrows his argument. As to this problem he was asked from the bench if he thought Congress "tried to set aside the final judgment of the Court of Appeals" to which he answered "of course not, but the final judgment * * * only went to jurisdiction. They didn't go to merits." Because of its importance we recur to this matter at a later point. (And see other aspects of the same argument in footnote 3.)

The argument of litigants concerning our duty to retroactively apply the specific language here in question meets a challenge in the fact that nowhere in this language is found even a vague ref-

erence to a decision of any court which is to be affected by the language. But we are told in a very frank argument that Congress was purposefully trying to blot out the effect of the several decisions of courts dealing with this litigation. No explanation or argument has been tendered as to why this legislative language made no mention of this long controversy and the court decisions affecting it.

In discussing the argument concerning retroactive effect of the cited language, counsel for petitioners herein (in asking for a double remedy, injunction and mandamus) argued that the mere fact that this amendatory language prescribes that the Home Loan Bank Board is *now* made a suable entity affords no basis for permitting Association to relitigate every phase of this litigation. He pointed out that our decisions holding the lower court to be without jurisdiction were not based on the fact that the Bank Board was not a suable entity; that our opinions were much more basic in that we held that the district court *lacked jurisdiction of the subject matter of the actions;* that now giving one of the defendants in the original actions (Bank Board) capacity to sue (which it did not previously have) certainly does not cure the basic defect in the district court's lack of jurisdiction of the subject matter in the original actions. He pointed out that the cited amendments to the Home Loan Bank law put in additional provisions with respect to the appointment of conservators by the Board and provided in substance that (now) the Board may not appoint a conservator of Federal Savings and Loan Associations except after notice and hearing, *in accordance with the Administrative Procedure Act,* 5 U.S.C.A. § 1001 et seq., subject to judicial review as provided in that Act. He argued that it is "perfectly obvious" that the amending language here relied on by litigants deals with any *future* appointments of conservators which the Home Loan Bank Board may desire to make and certainly does not even purport to deal with the appointment of a conservator nine years before

this amendment was passed and some seven years after the conservator went out of office, all of which emphasizes the obvious purpose of the amendment to "incorporate a new procedure which the Bank Board must [now] follow."

In short, his stated position was that the statutory language is made applicable to "any future appointments of a conservator; that in any event the judicial review provisions, *now for the first time put in this statute,* provide for judicial review *after administrative hearing and decision,*" to which he added that "there has not yet been and there never has been any administrative hearing and decision with respect to the appointment of a conservator [Ammann] of Association nine years ago"; so that even by the most strained construction one were to say this statute was deemed to have a retroactive effect, still, it does not confer *any present jurisdiction* in the courts for the simple reason that jurisdiction is only after the termination of administrative action which has not occurred in this case. Counsel summarizes his argument by the blunt statement (with which we wholly agree) that "there is nothing in the language of the [Housing] Act which indicates any intention to open up what this Court has decided." (Emphasis ours.) And see comment in our O'Melveny & Myers opinion (200 F.2d at page 454) that the Board was not (then) a suable entity.

■ We therefore reject as untenable the argument that the amendatory language in the Housing Act (even under the most strained construction) should be accepted by us as a retroactive vesting of jurisdiction in the lower court to continue to entertain and to try actions instituted by Respondent litigants after this Court had formally held the lower court to be without jurisdiction to entertain said actions and further held that the said court should have dismissed these actions. (See later comments on holdings in our opinions.) We are in complete agreement with the argument of counsel for petitioners herein that the language in

question should and must be regarded as purely *prospective* in its application. We are further convinced that the language used in no wise reflects an intention of Congress to reach back and nullify the finality of the several decisions of this Court in the past years in which we directly passed upon and adjudicated issues of law and fact formally before us on appeals regularly taken.

In dealing more specifically with the issue of retroactivity in relation to its effect on our decisions, counsel for litigants herein narrowed his contention, as we have noted above. As to these decisions he assures us that he was not assailing or trying to undermine the doctrine of res judicata; nor was he contending that the language was intended to wipe out decisions of this Court. His theory is that since the amendatory language *shows* that it is intended to be retroactive in effect, it becomes our duty to follow this congressional mandate which is so clearly *shown,* and apply this theory to *all* of the actions initiated by litigants (including the "new cases" and procedures above noted).

We have continued to stress this crucial aspect of the argument of litigants since it reaches to the heart of all the arguments before us. It is upon this hypothesis that counsel concludes and argues that as a matter of law *all of the material issues in all of the actions from the very beginning of the litigation* are still *"pending for trial on the merits"* in the court of Respondent District Judge, therefore the petition of petitioners must be denied.

So much for comment on what we regard as the most basic issue or issues now before us although these are embraced within the orbit of many other contentions and issues.

An excellent illustration of the breadth and significance of the claim of *pendency* of even the very earliest actions filed in this litigation (Nos. 5421-Mallonee action, 5678 Los Angeles action) is provided by a statement in litigants' brief that they are also "defendants in two consoli-dated actions in the District Court (Nos. 5421–5678)." This is directed to the legal right and necessity of *litigating all over again the issue whether the assets of Los Angeles Bank were "unlawfully seized" in 1946 under Board orders.* (See our O'Melveny & Myers opinion.) There can be no misunderstanding or doubt as to their exact position since their brief and oral arguments make abundantly plain that they squarely stand upon the contention that *all previous reported decisions of this Court* which dealt with and disposed of contentions respecting the legal rights of *all* of the various Respondent litigants who were drawn within the orbit of the so-called Mallonee case during the long course of this involved litigation are now (so far as concerns any and all of the said rights of these Respondent parties and litigants) completely devitalized by the noted language in the Housing Act.

And they appear to include within the sweep and thrust of this argument all that this Court said in its O'Melveny & Myers opinion concerning the issue of the statutory relationship existing between the Federal Home Loan Bank System and Association (and similarly situated institutions). *That issue* must be litigated again under their theory of the meaning of the Housing Act language.

### The Disclaimer Issue

The brief of Respondent litigants suggests the presence of an issue arising out of a so-called "disclaimer" *filed in the "note case"* (13979) by San Francisco Bank. In a 148 page opinion of Respondent District Judge (Federal Home Loan Bank of San Francisco v. Long Beach Federal Savings & Loan Ass'n, D.C., 122 F.Supp. 401) he granted summary judgments against petitioners herein *quieting the titles* of 8,000 home owner borrowers who had been brought into the old 1946 Mallonee case. (Save and except to a reference below to an earlier comment of Respondent District Judge to the *"disclaimer"* which appears in his opinion in (Mallonee v. Fahey) 117 F.Supp. 259, at page 292, our comments

here will refer to specific pages in 122 F.Supp.)

As litigants' counsel pointed out, the judgments "are based upon, among other things, written disclaimers made by petitioners * * * and recorded in the Los Angeles County, California, Recorder's Office, and filed by petitioners with the U. S. District Court in their own foreclosure action." This problem arose out of the fact that these original 8,000 "home owners" were borrowers from Association and the facts concerning them were the subject of comment in our Mallonee opinion, 196 F.2d 336, 369 and need not be repeated here.

In the above noted opinion of the Judge he discusses (122 F.Supp. at pages 409, 417, 422, 423, 428, 429, 433, 445) the facts and issues concerning the "disclaimer" of San Francisco Bank and refers to it as being, in effect, a "quit-claim deed." On page 417 the judge set out the text of the "disclaimer" and held that "the effective date of the disclaimer was the date of its filing in this action, viz., January 18, 1954." And see further comment of the judge (at page 429) that "the end result of the disclaimer was to quiet the title of the homeowners"; also his other comments on the pages we have noted as to the conclusive effect against San Francisco Bank of the "disclaimer" so far as concerns any later claim that bank might attempt to make against the real property involved.

As indicated, the Bank's disclaimer appears to have been filed in court *in* the records of pending case No. 13,979 in which action Association was claiming that titles of the "home owners" were "clouded" by contentions of San Francisco Bank hence the validity of this alleged "claim" of San Francisco Bank was an issue yet to be litigated in the lower court.

And see the earlier comment of the lower court in Mallonee v. Fahey, supra, 117 F.Supp. at page 292 showing that as of that time the lower court assumed that the original of the disclaimer of San Francisco Bank would properly "be filed in action 5421 [original Mallonee action] or 13979." He added the statement that "it is on its face a disclaimer to the real property involved in *all* trust deeds deposited in court in action 5421–5678 [the original Mallonee and Los Angeles actions and] I shall examine it and if it meets the requirements of the mandate [of May 21, 1953] as construed by the above memorandum, I shall promptly make the order for the return [to San Francisco Bank] of the collateral." (Emphasis ours.)

In the opinion of the lower court in 122 F.Supp. (at pages 435–436 and 439) it directed that summary judgments be entered in the note case (13,979) quieting title against claims of San Francisco Bank and A. V. Ammann, former Conservator, and Bramley, his deputy, in favor of the so-called home owners, Title Service Co. and Association, to the individual borrowers' notes and deeds of trust pledged to San Francisco Bank as collateral security, the real property covered by the deeds of trust, and "the money received by it [Association] from the 'homeowners' on the described notes and trust deeds." The breadth of this order would appear to include all of *the money* now on deposit in the registry of the court, and if it be thus construed, such summary judgments would contravene the mandate of this Court issued May 21, 1953. So far as this record indicates, neither Ammann nor Bramley, his deputy, has ever claimed any title to or interest in any of the said assets, this for the reason that Ammann and his deputy were simply managers of Association during Ammann's tenure as Conservator.

■ In the noted opinion the district court (at pages 429, and 436) directs judgment quieting the title of Association "to the *money* received *from* the homeowners on the trust deeds and notes which were paid *after* the commencement of the within litigation and *prior* to January 18, 1954." The court refers (at page 429) to the "effective date of the disclaimer" as being January 18, 1954. The "money" which the district court

proposes to absolve from any claim of San Francisco Bank appears to *include* the funds impounded in the registry of the court *in the consolidated actions* to which San Francisco Bank must look for recovery for a substantial portion of its collateral, and in this connection San Francisco Bank points out "that practically all of the *funds* now in court were paid by borrowers upon notes which were originally held by San Francisco Bank as part of its collateral." An order had been made by the district court impressing a lien *on said funds* for the benefit of San Francisco Bank, and under the mandate of this Court the bank was entitled to receive *out of funds on deposit in the court* a large sum as collateral security. This mandate (of May 21, 1953) was issued *in the consolidated actions* and under its terms San Francisco Bank was clearly entitled to forthwith receive delivery of substituted collateral *from the funds now in court*, and we so hold. We express this conclusion because the judgment proposed to be entered in the lower court in the related "note case" (13979) would be a flagrant transgression of this mandate. Under such a judgment San Francisco Bank would be deprived of all interest in those *funds*.

In this connection it must be noted that the funds (covered by our Mandate of May 21, 1953) were originally impounded in the registry of the lower court during the early stage of the Mallonee litigation (in consolidated actions 5421–5678) and were "transferred" and/or "retained" and thus reimpounded *in* "note case" No. 13,979. See comments of lower court at pages 443, 444, 446, where the lower court refers to the necessity of "retaining" these impounded funds due to "the complexities of this litigation," and a "change of conditions." At pages 409 to 413 of the opinion the lower court also discusses three documents executed by Ammann *to* San Francisco Bank while serving as Conservator for Association, these being (1) a "Subordination Agreement" on May 28, 1946, (2) a "Collection Agreement" on May 28, 1946 and (3) a "Pledge Agreement" on May 20, 1946.

In a footnote (at page 409) the lower court points out that "the officers of Long Beach Association had previously executed similar agreements *to* Los Angeles Bank." In default of further information from the parties we can only assume that San Francisco Bank required such protective agreements from borrowing member-associations when in 1946 it lawfully succeeded the abolished Los Angeles Bank under orders of "Administration."

However, Association still denies in pleadings in pending actions that San Francisco Bank is the "lawful successor" of the former Los Angeles Bank despite the fact that in 1946 all of the assets and properties held by Los Angeles Bank were transferred to the newly created San Francisco Bank by and under the reorganization orders of "Administration." The latter bank thereafter continued to exercise all of the functions and perform all of the duties imposed upon it by law which duties had theretofore been performed by the abolished Los Angeles Bank. Under the reorganization orders San Francisco Bank was required to and did assume all of the current and existing obligations and liabilities of Los Angeles, and it also became bound by all of the statutory obligations of a Federal Home Loan Bank which had previously existed between Los Angeles Bank on the one hand and Association and similar institutions on the other. It was also entitled to avail itself of whatever protection for such a bank as was authorized under the terms and provisions of law and regulations affecting the Federal Home Loan Bank System. In short, San Francisco Bank (as successor to Los Angeles Bank) simply stepped into the corporate shoes of Los Angeles and became bound by all of the duties and obligations mutually imposed upon Federal Home Loan Banks and their member stockholders. So much is the clear holding of this Court in Fahey v. O'Melveny & Myers, 200 F.2d 420.

In addition to the breadth and sweeping character of the language used in the disclaimer, petitioners in the instant proceeding (of which San Francisco Bank is

one) have represented to us in their brief in this proceeding that San Francisco Bank "makes no claim against the title of *any* home owner who was a borrower .from Long Beach Association." In short, we are assured that the claim of the bank is against the corporation—Association, and not against these "home owner" borrowers who gave notes and trust deeds to Association as security for loans on these properties. Petitioners also advise us that they have given the same formal assurance to the lower court and to the Supreme Court. In the disclaimer (at page 417 of the above noted opinion of district court) it clearly appears that San Francisco Bank was not waiving any claim *against Association* since the disclaimer contains the following provision: "The undersigned, by these presents, does not waive, release, discharge, postpone or in any manner impair any of its rights as against said Long Beach Federal Savings and Loan Association or the property and assets thereof, but to the contrary expressly reserves all such rights." (Emphasis in all above quotations is ours.)

Concerning the question of the effect of the bald and sweeping "disclaimer" filed by San Francisco Bank we find nothing in the record which carries or justifies a legitimate suggestion or inference that San Francisco Bank might or could hereafter assert (with any possible lawful basis) some sort of claim which would cloud, or tend to cloud, the titles of the individual owners of the real property here specifically referred to. In its above noted opinion (at page 417) the lower court points out that the "disclaimer" of San Francisco Bank was not only filed in pending action 13,979, but was also filed and recorded in the official (real estate) records of Los Angeles County on November 30, 1953 (the County in which the real property was located) and that the disclaimer was officially approved by the Board of Directors of the Bank. That this sort of public record completely ties the hands of San Francisco Bank seems more than obvious, and we are thoroughly convinced that if any court was hereafter confronted with this record it would be more than justified in bluntly refusing to entertain, or tolerate, a suit by that Bank in which it sought, directly or indirectly, to assert any claim against or interest in the said real property of these individual "home owners" if the claim arose out of the transactions here referred to and which were discussed in our Mallonee opinion. So much for the "disclaimer."

### The Walker Claim

In passing we point out that in a letter to this Court under date of July 15, 1954 (copies of which letter were sent to counsel for all Respondent litigants) counsel for San Francisco Bank emphasized that this Bank claims and has a lien upon all Government bonds in the registry of the court and upon all of the cash and funds therein *until* actually delivered to San Francisco Bank in the total sum as provided in paragraph 3 of our mandate of May 21, 1953. We refer to this letter because it also discusses the claim of Ronald Walker for fees claimed to be due him for services as a Special Master. This claim deserves attention at our hands because of its somewhat uncertain status in this litigation. (See our Mallonee opinion (196 F.2d at page 369) where we made reference to his appointment as Special Master.)

In this letter counsel for San Francisco Bank also advised that Mr. Walker had asked them to inform this Court that a then proposed order specifically provides for payment to him from funds on deposit in court "against which no claim or lien is asserted by the Federal Home Loan Bank of San Francisco, or any other party," and that the order proposed by him concerning his fees as Special Master would be executed concurrently or subsequent to an order delivering the funds from the registry of the court *to* San Francisco Bank pursuant to the mandate of May 21, 1953.

In fairness to all parties the position of San Francisco Bank (as we understand its position) in respect to the Walker claim for allowance of a fee should be

made plain because of the bearing this claim has on the disposition of the impounded funds. The immediate problem arises out of the following facts.

On July 22, 1954 the lower court entered an order in the original Mallonee action 5421 directing that the sum of $87,500 for fees to Ronald Walker and an additional sum of $8,108.31 for his expenses should be taxed as costs in the Mallonee action and against the funds of Association on deposit in the registry of the court. As against this allowance a credit of $75,284.18 was allowed Association for funds previously paid to Walker *from its funds* on deposit in the registry of the court. The order of the court directed the clerk of the court to pay to Walker, as Special Master, the sum of $20,324.13 from funds on deposit in the registry of the court *belonging to Association.* This seems to be the order with which we are here concerned.

Prior to the entry of the order here noted, San Francisco Bank had objected to the entry of such an order. On September 16, 1954 the lower court entered an order in (Mallonee) action 5421 "severing" the funds on deposit in the registry of the court. After reciting therein the provisions of paragraph 3 of our mandate of May 21, 1953, the court said:

"In order to carry out the terms of the mandate, and in order to permit an orderly disposition of the funds and properties on deposit in Court, whether claimed by Federal Home Loan Bank of San Francisco, Long Beach Federal Savings and Loan Association, or others, the said U. S. Government bonds in the face amount of $5,300,000, and their attached coupons, and cash in the sum of $994,865.01, plus 14 cents per day from and after August 3rd, 1953, plus said conservator's notes in the face amount of $6,300,000, be, and are, *severed* from all other property and cash now on deposit in the registry of this Court, and the Clerk is hereby ordered and directed to hold the same under a separate account, on his books in the within action, to the credit of the Federal Home Loan Bank of San Francisco and/or Long Beach Federal Savings and Loan Association, pending further order of this Court." (Emphasis ours.)

Concerning the said order of September 16, 1954 (and prior to the entry thereof), San Francisco Bank had advised this Court and all counsel for Respondent litigants by the above mentioned letter of July 15, 1954 that the order of *severance* then being proposed provided for payment to Ronald Walker from funds on deposit in the court "against which no claim or lien is asserted by San Francisco Bank or any other party." In this letter San Francisco Bank pointed out that it had filed objections to such an order, and (as above indicated) made plain the precise nature of its claim of lien on the impounded funds. The Bank further asserted therein that the Clerk of the District Court was without authority in law to make *a severance* of the funds in the registry *or* to make the determinations of fact and law required by the terms of the (then proposed) order; and that no order *invading the said funds* is permissible *until* the aforesaid portion (paragraph 3) of said mandate is carried into effect and fully consummated.

We have no doubt regarding the duty of Respondent District Judge respecting disposition of the impounded funds, insofar as concerns San Francisco Bank. If a doubt exists in his mind it should be dispelled by the clear and simple provisions of the command in paragraph 3 of our mandate of May 21, 1953, a copy of which is set out in footnote 3, supra. He should have promptly complied with this command.

The entire record establishes beyond any question that so far as concerns the immediate question of disposition of the impounded funds, San Francisco Bank is demanding, and justly so, that this impounded property be delivered to it exactly as specified in our mandate. It is

also abundantly clear from the record that San Francisco Bank is not here concerning itself with, or making an issue of, the amount (or the source from which derived) of fees that may be paid to Special Master Ronald Walker *provided* such payment does not impair or lessen the amount of property and assets ordered by our mandate to be delivered and paid over to San Francisco Bank. Therefore, it is not necessary to decide any question associated with or relating to any balance of fees, or the amount thereof, which may or should be paid to said Special Master. Solely by way of comment, we add that this Court perceives no sound reason why his fee, if properly payable, may not be paid from any funds remaining in the registry of the court *after* the claim of San Francisco Bank is satisfied in full pursuant to and in accordance with the express terms of our mandate.[11]

■ From the foregoing, we conclude and therefore hold and direct that *if* any order or orders of Respondent Judge of the District Court invade such impounded funds to an extent or degree which results in diminishing the total amount of the presently impounded funds and assets below the full amount required to be delivered to San Francisco Bank pursuant to our mandate, Respondent Judge is hereby ordered and directed to forthwith vacate such order or orders, or modify them to conform to the views here expressed.

### Our Decisions

It is necessary to keep in mind that the issues we here confront stem from and deal with an aggregate of closely related and highly complicated legal and fact situations which had their beginning in 1946 and which have since continued to give character to the controversy. Litigation over the issues before us in the instant hearing had been proceeding in the lower court for several years before the first appeal (in the consolidated cases) reached this Court with its confusing medley of issues presented in a record which was then of enormous length. Our Mallonee opinion portrays some of the complications then present all of which have been provocative of more litigation.

In our opinions in the two subsequent appeals we were required to meet and dispose of certain issues arising from time-to-time decisions of the lower court dealing with one or more of the many phases of what is really one body of litigation. Of necessity, these decisions were written in light of our holdings in the Mallonee opinion. Furthermore, Respondent litigants have, throughout the entire course of this litigation, vigorously contended that *all* issues therein were so inseparably linked and hopelessly intermingled as to require an overall consideration of all issues when disposing of any part of them. This theory (noted in our Mallonee opinion) is also reflected in the various pleadings in the so-called "new cases" instituted by these litigants.

On the record and the arguments now before us on the petition herein it appears to be the view of Respondent litigants that, save and except as to certain matters not important to our decision here, our three opinions amount to no more than narratives of events and as such entirely void of decisional holdings or pronouncements on the "merits" of any of the vital issues discussed in these opinions. Obviously such a sweeping indictment is intended to include our holding in the Mallonee opinion that the lower court was without jurisdiction and should have dismissed the five actions referred to on page 379 of 196 F.2d of our Mallonee opinion. We disagree with and reject this theory of litigants respecting the meaning and interpretation to be given the language of the opinions. They

11. For an illuminating comment by the lower court on the question of allowance of fees to the Special Master see its observations in Mallonee v. Fahey, 122 F.Supp. 472, at page 474, et seq., where it discusses the question of liability for payment of his fees under our several mandates issued pursuant to the Calverley opinion.

dealt with and discussed in detail specific issues before us on those appeals and our holdings on these specific issues were not intended to be so much idle obiter within the total framework of the opinions. To the contrary, we directed them to, and intended them to be dispositive of, the issues with which they purported to and did deal, and under well established precedents they must be deemed to be incorporated into and therefore an essential part of the mandate or mandates issued pursuant to the opinions, as fully and completely as though the opinions were set out at length in these mandates.

And that no doubt should remain concerning the intention of this Court that its opinions and judgments should be incorporated in and be a part of the mandates issued pursuant to these decisions, we incorporated in each of said mandates a specific provision "that such proceedings be had * * * in conformity with the opinions and judgments of this Court." (See footnote 10, supra.) That sort of a requirement would have been worse than useless had we *intended* that our conclusions and holdings should be regarded as mere historical naratives.

And see footnote 4, supra, where we pointed out that when certiorari was sought to review our Mallonee opinion, representation to the Supreme Court in briefs of Association, the original Mallonee group of litigants and Wilmington Federal Savings and Loan Association emphasized *our holdings* in that opinion concerning absence of jurisdiction in the lower court and our order of *dismissal of the actions.*

We first turn to the holdings and pronouncements in our Mallonee opinion and refer to the pages where they appear in the reported opinion. Excerpts from the two other opinions will be given like treatment. Emphasis supplied in these excerpts is ours.

### The Mallonee Opinion

Page 349 of 196 F.2d. Three parties in the litigation, to wit, Mallonee (identified on page 340), Association and Title Service Company were referred to as the "Mallonee-Association group."

Page 365. We here noted that Fahey filed a motion challenging the jurisdiction of the Court over the subject matter of the Mallonee-Association *actions* and over Fahey. This motion was grounded on the claim that the Court was without jurisdiction because Fahey was an indispensable party over whom the Court lacked jurisdiction, and that the complaints of these parties failed to state a claim entitling them to relief. We pointed out that the last mentioned claim was maintained throughout the litigation (and included the complaints as amended in November, 1947). (See also pages 370 and 379 of opinion referring to these amended complaints.)

Page 366. We pointed out that the error of the lower court was in entertaining *the actions* of the Mallonee-Association group prior to a resort to exhaustion of the then tendered and available administrative remedies.

Page 370. We pointed out that appellants in the Mallonee-Association group *actions* continued to maintain their objection to the sufficiency of the original pleadings in these group *actions*, and continued to maintain their objection that the pleadings therein, as amended, failed to state a claim upon which relief could be granted. We *held* that the lower court erred when it then failed to promptly *dismiss these actions*, and that it compounded its original error in entertaining the *actions* of this group of litigants prior to the exhaustion of the administrative process. On the same page we further pointed out that the amendments to pleadings made in November, 1947 failed to provide a sound legal basis for further entertaining *these actions;* that for sixteen months after the said amendments the court not only entertained the original injunction *actions* of Mallonee, Association and Title Service Company, but continued to pass upon and adjudicate issues based upon their purported claims for relief which claims *had no existence or substance in law* because

they failed to present a justiciable controversy.

Page 371. We pointed out that the lower court appeared to be convinced that the decision of the Supreme Court in Fahey v. Mallonee, 332 U.S. 245, 258, 67 S.Ct. 1552, 91 L.Ed. 2030 cleared away any doubt of the propriety and legality of continuing to entertain *the actions* of Mallonee and Association.

Page 372. We pointed out that possibly some observations of the Supreme Court in Fahey v. Mallonee, supra, may have convinced the lower court that adding the charge of "fraud" to the original Mallonee and Association pleadings justified its procedural course from the beginning of the litigation, a conclusion with which we disagreed.

Page 374. We pointed out that "one simple and controlling issue of law was present" in this litigation—"the legality of the Ammann appointment." We were referring to the litigation embraced in the Mallonee-Association group pleadings. The answers of appellants to all such pleadings alleged, inter alia, that the lower court *lacked jurisdiction* both over the persons of the non-resident defendants, and of the subject matter of *the actions* and that none of the complaints or cross-claims stated a claim for which relief could be granted. We noted at this point that this same defense had been promptly made on the institution of the litigation. All cross-actions and proceedings in the Mallonee action 5421 appear to be based upon the alleged invalidity of the Ammann appointment and we regard these actions as being clearly ancillary (and see our holding on page 379).

Page 379. We again emphasized that the lower court was *without jurisdiction* under the original pleadings of this action, *as amended in 1947,* in that they failed to state causes of action, and added the further statement "and we think it quite clear that the pleadings of the subsidiary and interpleading litigants Wallis and Home Investment Company * * failed to tender an issue or issues which presented a claim upon which relief could have been granted by the court"; that the claims of Wallis and Home Investment Company were part and parcel of the Mallonee and Association contentions and if relief demanded by the "Mallonee-Association group" (see identification of "Mallonee-Association group" on page 349) was improperly and unlawfully granted by the court "it is certain that the ancillary and subsidiary claims of these litigants [Wallis and Home Investment Company] which arose only out of the claims of Association, were without substance in law." We further pointed out that "if the claims of Association were untenable in law, it is obvious that the claims of these litigants could rise no higher than their source." Following these comments *we held that the court should have dismissed all of these original five actions* (Mallonee, Association, Title Service Company, Wallis and Home Investment Company) for the reason that they failed to state a claim upon which relief could be granted *and* for the further reason that Association had failed to exhaust tendered and available administrative remedies.

Page 381. While the so-called Mallonee-Association litigation (which also embraced collaborating parties) was before us on an appeal from a preliminary injunction issued in December, 1949, the facts of this bracket of the litigation are really bottomed on two such injunctions both of which enjoined the holding of administrative hearings. All of this clearly appears in our Mallonee opinion where we pointed out that the doctrine of exhaustion of administrative remedies requires not merely the initiation of prescribed administrative procedures; it requires pursuing them to their appropriate conclusion and awaiting their final outcome before seeking judicial intervention. (On page 386 of our opinion we point out that it was on motion of five appellees, Mallonee, Association, Title Service Company, Wallis and Turner that the lower court restrained the holding of the second administrative hearing.)

Page 382. We held that after September 11, 1946 the trial court should have refused to longer entertain the Mallonee-Association *actions,* and that it erred when it failed to immediately dismiss *them* on the ground that tendered and administrative remedies were not first exhausted. We added that "failure of the court *to dismiss these actions* after September 11, 1946 merely compounded the original error of the court in entertaining *them* at the outset of the litigation," in which statement we were repeating in part what we said on page 370 of the opinion.

Page 383. We said: "Upon the whole record we are fully convinced and therefore hold that procedure in the lower court subsequent to the injunction order of July 1, 1946 (including the amendment of the Mallonee and Association pleadings under the order of November 10, 1947) did not have the legal effect of vesting jurisdiction in the lower court to entertain *these actions* after September 11, 1946."

Page 391. The last and final holding in the Mallonee opinion appears on this page. Therein we reversed an order of the lower court for entry of a preliminary injunction and directed the court below to vacate and set aside the injunction.

### The O'Melveny & Myers Opinion

Pages 427–428 of 200 F.2d. "Other appeals now pending in this court also involve these impounded funds which suggests the necessity of identifying their source and nature. The record indicates, and stress is given the fact that this fund arose out of five 'interpleader or intervention proceedings' in the so-called 'Mallonee Case,' supra (which was consolidated with the 'Los Angeles Action' in the main case) each of which interpleader proceedings was based on the presumption that the 1946 order of the Federal Home Loan Bank Administration appointing Ammann as Conservator of the Long Beach Federal Savings and Loan Association *was void ab initio,* and that *every act* performed by Ammann in the management of the said

Association was a nullity and therefore subject to collateral attack. These interpleader and/or intervention proceedings in the main case which we describe at this point were instituted by Title Service Company, Robert H. Wallis, Home Investment Company, George Turner and the Long Beach Federal Savings and Loan Association. *All were parties in and to the so-called Mallonee case.* Home Investment Company intervened on July 1, 1946 to secure an order quieting title and to secure reconveyance of 174 deeds of trust which had previously been interpleaded by Title Service Company in its answer and cross-claim in interpleader and which deeds had been deposited in court. Home Investment Company does not appear to be a claimant to the funds here considered."

Page 428. "As to the intervening and interpleading parties mentioned in the preceding paragraph see our opinion in the main case, 196 F.2d 336, 378, 379, wherein we held that the five original *actions or proceedings* instituted by the there identified Mallonee-Association group and Wallis and Home Investment Company should have been dismissed by the lower court for the reason that they failed to state a claim upon which the relief they demanded could be granted and for the further reason that Association had failed to exhaust tendered and available administrative remedies."

Page 429. We again emphasized that the question as to the *validity* of the original appointment of Ammann as Conservator of Association underlies, explains the existence of, and gives decisive character to much of the controversy over the impounded funds.

Page 459. Since in actions of Respondent litigants now pending in the lower court the issues in the so-called Los Angeles action are revived and asserted despite the fact that we ordered the lower court to dismiss that action. On this page of the opinion appears the following pronouncement: "Under the facts and the law, and for reasons set forth in this opinion, we are obliged to hold, and do

hold, that the lower court was without jurisdiction of the subject matter of the Los Angeles action and without jurisdiction in personam over indispensable parties in and to such an action. The lower court improperly entertained this *action* which should have been dismissed when the Commissioner challenged the jurisdiction of the court."

Page 460. In this opinion we have emphasized the inseparable nature of the issues in all of the actions we are here considering. On this point in the opinion we emphasized that "questions as to liability under the claims of Association thus appear to be inseparably related and linked to the controlling issues in the Los Angeles action."

Page 481. In concluding this opinion we remanded the case before us to the lower court with directions to that court to dismiss the Los Angeles action.

### The Calverley Opinion

Page 199 of 208 F.2d. "The several appeals to which the two motions [above described in the opinion] are directed arise out of litigation which has previously been before this Court and finally disposed of in Home Loan Bank Board v. Mallonee, 9 Cir., 196 F.2d 336, and Fahey v. O'Melveny & Myers, 9 Cir., 200 F.2d 420, certiorari denied [Mallonee v. Fahey], 345 U.S. 952, 73 S.Ct. 863 [97 L.Ed. 1374], rehearing denied 345 U.S. 978, 73 S.Ct. 1120 [97 L.Ed. 1393]. This Court there *determined* that the District Court *was without jurisdiction of the subject matter of either of said consolidated actions* and accordingly our mandate, filed May 21, 1953, directed dismissal of the Los Angeles Action (No. 5678-P.H.) and the principal pleadings in the Mallonee Action (No. 5421-P.H.).

"In view of this Court's previous determination that the said *consolidated actions present no justiciable controversy within the jurisdiction of the Federal Court,* it necessarily follows that the District Court *was and is without authority to proceed in these said consolidated actions or either of them or in any collateral matters which are not founded upon an independent basis of Federal jurisdiction.* This Court's previous decisions in this matter require not only the dismissal of the principal pleadings *and proceedings,* but also the dismissal of matters ancillary thereto."

Page 200. "However, there is no necessity for further continuing these appeals. In our previous opinion (heretofore referred to) *it was determined that the lower court was without jurisdiction of the subject matter of the Mallonee Action* and from this it rationally follows that it was improper for the lower court to require the deposit in Court of Government bonds and other collateral securities as to which San Francisco Bank claims a lien. This Court has already directed that there be delivered to San Francisco Bank from the registry of the District Court government bonds and cash sufficient to restore it as nearly as possible to the position it occupied as a secured creditor prior to the time it was erroneously required to make the deposit. * * *

\* \* \*

"Inasmuch as it has been held that the District Court was without authority to proceed *in the said consolidated actions,* the appointment of a receiver was a nullity and the purported receiver was without power to act. Nor can his expenses (the estimated costs above noted) be paid from funds on deposit in Court. [Citing cases.] Appellants' motion to remand appeals Nos. 13,411 and 13,558 should be granted with directions to the District Court to vacate the orders complained of and to dismiss the proceedings instituted by the purported receiver.

"Where, as here, *it appears that the District Court has no jurisdiction of the subject matter,* it is appropriate to remand the proceedings to the District Court with directions for their disposition. Zank v. Landon, 9 Cir., 205 F.2d 615."

### Final Conclusions and Orders

It is clear that Respondent District Judge and Respondent litigants herein have at all times erroneously and wrong-

fully construed and interpreted the meaning and intent of this Court as expressed in its three opinions and decisions, and mandates issued pursuant thereto. In our Mallonee opinion we held that the lower court was without jurisdiction to entertain the actions of the Mallonee-Association group of litigants and the actions of Wallis and Home Investment Company, and that the court should have dismissed *all* of these original five actions. Despite the foregoing holdings Respondent litigants, by means of the above noted procedures, motions, and filing of new actions in said lower court, have continued at all times to litigate or relitigate therein issues of law and fact tendered in the actions of these Respondent litigants from the inception of this litigation. These procedures are designed to and do frustrate and nullify the said decisions of this Court.

 On the whole record it is hereby ordered that, save and except as to a decision of this Court on the issue of remand to a state court of action 13,979 (paragraph 6 of prayer of petition) and dismissal of Action 5678 (paragraph 1 of prayer of petition), the petitioners herein are entitled to receive from this Court the relief prayed for in their petition, and that such relief shall be effected by the issuance of writs of injunction and mandamus, all as hereinafter provided. This Court has power, under 28 U.S.C.A. § 1651, to enforce by such writs a compliance with our decisions in accordance with our intent and purpose as we here construe such intent and purpose.[12]

---

**12.** The All Writs Section of the Judicial Code, 28 U.S.C.A. § 1651(a) grants this Court the power to issue writs of mandamus and/or injunction to enforce compliance with or to prevent a nullification or circumvention of its earlier mandate. There is in the record before us a more than sufficient showing of peculiar hardship; the lower court was in error, and it is our view that there is no adequate remedy by way of appeal to correct the grave abuses here shown. In short, this record establishes the presence of all necessary elements to justify the granting of the extraordinary relief to petitioners here prayed for. See United States Alkali Export Association v. United States, 325 U.S. 196, 212, 65 S. Ct. 1120, 89 L.Ed. 1554; Gulf Research & Development Co. v. Harrison, 9 Cir., 185 F.2d 457, 459; Shapiro v. Bonanza Hotel Co., 9 Cir., 185 F.2d 777.

It is the duty of the District Court promptly to obey a mandate from the Appellate Court, and its failure to do so can be corrected by mandamus. In the Matter of Howard, 9 Wall. 175, 19 L.Ed. 634. See also Brictson Mfg. Co. v. Woodrough, 8 Cir., 284 F. 484, where upon a prior appeal the Court of Appeals had held the District Court without jurisdiction to entertain a receivership proceeding and by its mandate had directed the return of property held by the receiver. The District Court had however suspended such return pending hearing of applications for intervention by other claimants. On petition for writ of mandamus the Court of Appeals held that such delay was beyond the power of the District Court.

In Independent Nail & Packing Co. v. Perry, 9 Cir., 214 F.2d 670, the court held that the District Court's order staying a judgment entered pursuant to a mandate from the Court of Appeals violated the mandate, and issued a writ of mandamus to put the judgment into full force and effect.

In our Mandate of May 21, 1953, we directed the lower court to perform a specific act, i. e., to return certain notes, bonds with attached coupons, and cash to San Francisco Bank. This order left no discretion in the lower court to do other than conform thereto. Executing the order was therefore a purely ministerial act. Bastian v. Erickson, 10 Cir., 114 F.2d 338, 340, 341. The Tenth Circuit there cites Ex parte Sibbald v. United States, 12 Pet. 488, 491, 492, 9 L.Ed. 1167, to the effect that the court below must follow the direction given and has no power to deviate therefrom.

In the Sibbald case, supra, the Supreme Court made clear that after an appeal, the District Court is bound to comply fully with the mandate and opinion of the Appellate Court and is without authority to entertain or take action inconsistent therewith. The Court said: (12 Pet. at page 491, 9 L.Ed. 1167) "Whatever was before the court, and is disposed of, is considered as finally settled. The inferior court is bound by the decree as the law of the case; and must carry it into execution, according to the mandate. They cannot vary it, or examine it for

# 386

Based upon the petition of petitioners and upon full consideration of the record before us and the issues therein presented, this Court does now Order that a writ of mandate issue directed to the said District Court, and to Honorable Peirson M. Hall, Judge thereof, in the words and figures following, to wit:[13]

### UNITED STATES COURT OF APPEALS
### FOR THE NINTH CIRCUIT

FEDERAL HOME LOAN BANK OF SAN FRANCISCO; W. W. MCALLISTER and WILLIAM K. DIVERS, as members of the Home Loan Bank Board; A. V. AMMANN; GEORGE K. BRAMLEY; and the FEDERAL SAVINGS AND LOAN INSURANCE CORPORATION, a federal corporation,

*Petitioners,*

vs.

HONORABLE PEIRSON M. HALL, Judge of the District Court of the United States for the Southern District of California; THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA; MALLONEE, BUCKLIN, and FERGUS, acting as THE SHAREHOLDERS PROTECTIVE COMMITTEE OF LONG BEACH FEDERAL SAVINGS AND LOAN ASSOCIATION; LONG BEACH FEDERAL SAVINGS AND LOAN ASSOCIATION; TITLE SERVICE COMPANY; ROBERT H. WALLIS; FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF WILMINGTON; HOME INVESTMENT CO.; GEORGE TURNER; FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF BELLFLOWER and JOHN D. WILLHOIT,

*Respondents.*

No. 14378

any other purpose than execution; nor give any other or further relief; nor review it upon any matter decided on appeal, for error apparent; nor intermeddle with it, further than to settle so much as has been remanded."

The rule announced by the Supreme Court in the Sibbald case was again approved by the Supreme Court in the recent case of Briggs v. Pennsylvania Railroad Company, 334 U.S. 304, 306, 68 S.Ct. 1039, 1040, 92 L.Ed. 1403, where the Court said: "In its earliest days this Court consistently held that an inferior court has no power or authority to deviate from the mandate issued by an appellate court [citing cases, including the Sibbald case]. The rule of these cases has been uniformly followed in later days. [citing cases.]"

If the District Court fails in this duty, misconstrues the mandate or exceeds its powers by acting in contravention thereof, its actions may be controlled by a writ of mandamus. In re Sanford Fork & Tool Co., 160 U.S. 247, 255, 16 S.Ct. 291, 40 L.Ed. 414; In re Potts, 166 U.S. 263, 17 S.Ct. 520, 41 L.Ed. 994; Delaware, L. & W. R. Co. v. Rellstab, 276 U.S. 1, 48 S.Ct. 203, 72 L. Ed. 439; Butcher & Sherrerd v. Welsh, 3 Cir., 206 F.2d 259; In re United States, 5 Cir., 207 F.2d 567.

An appellate court has unquestioned power under 28 U.S.C.A. Sec. 1651(a) to enforce compliance with its decree by directly enjoining action contrary thereto. Toledo Scale Co. v. Computing Scale Co., 261 U.S. 399, 426, 43 S.Ct. 458, 67 L. Ed. 719; Harrison Beverage Co., Inc., v. Hunsberger, 3 Cir., 65 F.2d 873. See Board of Governors of Federal Reserve System v. Transamerica Corp., 9 Cir., 184 F.2d 311, 315, 317. Consult Ferguson v. Ferguson, Tex.Civ.App., 189 S.W.2d 442 involving a situation somewhat similar to that here considered, certiorari denied 337 U.S. 943, 69 S.Ct. 1498, 93 L.Ed. 1747.

13. Attached to, incorporated in and made a part of the Writ of Mandamus herein set forth and which Writ is by this Court ordered and directed to be issued and directed to the said lower court and to the Judge thereof, is a form of receipt marked Exhibit A. The several bonds therein enumerated are specifically described and referred to in several parts of the printed Transcript of Record in case No. 12511, supra, this being the record on appeal to this Court in the so-called "consolidated cases." A careful inspection of the entire record before us, including the Exhibits, noted supra, makes abundantly plain that the enumeration and description of the said

Writ of Mandamus

United States of America, ss:

To the Honorable Peirson M. Hall, Judge of the United States District Court for the Southern District of California, and to the United States District Court for the Southern District of California; Greeting:

Whereas, On May 21, 1953, this Court issued to you its mandate in Appeals Nos. 12511 and 12591, being appeals from orders entered by you in consolidated Civil Actions Nos. 5421 and 5678 in your Court; and

Whereas, it appeared upon the petition of Federal Home Loan Bank of San Francisco, et al., for a writ of mandamus, injunction, and other appropriate relief, filed in this proceeding, and upon the returns and answers of respondents herein

bonds set out in said Exhibit A are accurate.

The four so-called "original straight notes" enumerated and described in said Exhibit A are the identical "notes" described in said record on appeal in this Court in said case No. 12511, these being the four notes issued by A. V. Ammann to San Francisco Bank on behalf of Association during the period in which said Ammann was officially serving as Conservator of Association.

We take judicial notice of the fact that the nine agreements and documents described and set forth in said Exhibit A were, by order of the lower court entered on December 11, 1953 in Action 5421, directed to be delivered over to San Francisco Bank by the Clerk of said court on December 22, 1953. (As we have noted, supra, execution of this order was stayed by a later order of said court issued on December 21, 1953.) In the said delivery order of December 11, 1953, the lower court directed the Clerk to deliver to the said San Francisco Bank the bonds, cash and the various documents therein described. The amount of cash referred to in Exhibit A to the Writ of Mandamus and ordered to be delivered to San Francisco Bank is based upon the provisions of our Mandate of May 21, 1953, together with the terms of the aforesaid order of the lower court dated December 11, 1953, and the interest due on the said notes less the accruing interest on the said government bonds from day to day, all as evidenced in and computed, as nearly as may be from these sources of information. In making his computations of interest as set forth in the said order of December 11, 1953 (which order was made in compliance with the aforesaid Mandate of this Court) the lower court appears to have attributed to coupons on the said bonds the aspect of cash. The interest therein mentioned was computed to August 3, 1953. As we indicated in said Exhibit A to the Writ of Mandamus herein ordered to be issued, it will be

necessary to make additional computations of accrued interest to indicate the exact amount of cash to be delivered to San Francisco Bank under our Writ of Mandamus, as of the date of delivery of said cash. The Clerk of the lower Court should readily make such computations from his records.

The said four promissory notes and nine agreements and documents had previously been impounded in the Registry of the Court pursuant to an order of the lower court entered in Action 5421 on March 13, 1948 all as appears in the printed record on appeal in cause 12511 in this Court. In response to said order the said San Francisco Bank delivered over to the Clerk of the lower court the said four notes and nine agreements and documents here referred to, said delivery being accompanied by a letter from said Bank dated March 20, 1948 in which was listed all of said notes and documents. On March 30, 1948, the said Clerk of the lower court acknowledged in writing over his signature the receipt of said four promissory notes and said nine documents, said acknowledgment being placed on a carbon copy of said letter of delivery which copy was returned to said San Francisco Bank after delivery to said Clerk was effected. A photostatic copy of said letter of delivery and acknowledgment of the Clerk is on file as an Exhibit in the instant proceeding.

The cash presently in the impound and affected by the Writ of Mandamus herein directed to be issued appears to have been retained in the impound at all times here pertinent. Details concerning the reason for and basis of retention of this cash by the Clerk of the lower court in the Registry of said court will be found in an order and judgment of the lower court entered in the so-called "consolidated actions" on March 26, 1948. Under an order or orders of the lower court the government bonds here involved have been held, and are now held for safe keeping by the Los Angeles Branch of the Federal Reserve Bank of San Francisco.

and the exhibits and records filed herein that you had certified and returned to this Court an insufficient cause against the awarding and issuing of a writ of mandamus, and it was considered by this Court that you have failed to comply fully with said mandate and that the peremptory writ of the United States issue, requiring and commanding you, the said Judge of said District Court, and said District Court to take action necessary to comply fully with said mandate;

Now, Therefore, you are hereby commanded and enjoined immediately after the receipt of this writ, and without delay, to

(1) dismiss forthwith Civil Action No. 5421 and all pleadings and proceedings therein in said District Court; and (2) to dismiss such of the following pleadings in Civil Action 13979 in said District Court as have not heretofore been dismissed, to wit: Cross-claim filed by Long Beach Federal Savings and Loan Association, Third Party Complaint filed by Long Beach Federal Savings and Loan Association, Complaint in intervention and interpleader of Title Service Company, Complaint in intervention of Robert H. Wallis, Complaint in intervention of John D. Willhoit, Cross-claim of Home Investment Company, and all other cross-claims, third party complaints, interventions and interpleaders, motions and proceedings in said action No. 13979 which bring in question (a) the validity of the appointment of A. V. Ammann, as conservator of Long Beach Federal Savings and Loan Association; and (b) that said A. V. Ammann was validly authorized to act as the conservator of said Long Beach Federal Savings and Loan Association, during his tenure as conservator; (c) that said Mallonee, Bucklin and Fergus and said Long Beach Federal Savings and Loan Association are precluded, by their failure to resort to the administrative remedy tendered them by the Federal Home Loan Bank Administration in connection with the appointment and conduct of said Conservator, from obtaining any judicial relief based on the alleged invalidity of the appointment of said A. V. Ammann as Conservator of said Long Beach Federal Savings and Loan Association or on his alleged lack of authority to act as the Conservator of said Association during his tenure as Conservator; (d) the legality of the action of the Federal Home Loan Bank Administration in liquidating, reorganizing and dissolving the Federal Home Loan Bank of Los Angeles, in transferring its assets and liabilities to the Federal Home Loan Bank of Portland, in changing the name of said Federal Home Loan Bank of Portland to Federal Home Loan Bank of San Francisco, and in moving it to San Francisco; or (e) the present legal existence of the Federal Home Loan Bank of San Francisco as the duly authorized Federal Home Loan Bank for the Eleventh Home Loan Bank district as readjusted by Federal Home Loan Bank Administration Order No. 5083, dated March 29, 1946.

The Clerk of said District Court is hereby commanded and enjoined to deliver to the Federal Home Loan Bank of San Francisco within five days of the date hereof and upon the giving by said Federal Home Loan Bank of San Francisco of a receipt in the form hereto attached, marked Exhibit A; all the property and documents and cash described in said receipt. Nothing herein shall be construed to prevent the District Court, if it so elects, from vacating the stay of its order of July 22, 1954 assessing costs of reference and directing its clerk to pay to Ronald Walker, Special Master, the amount therein specified from funds remaining on deposit in the Court after delivery of the property herein specified to the Federal Home Loan Bank of San Francisco.

You are further commanded and enjoined to certify perfect obedience and due execution of this writ to this Court within ten days from the date hereof. Hereof fail not at your peril and have then and there this writ.

Exhibit A

United States District Court
Southern District of
California

Central Division

Mallonee, et al.,
 *Plaintiffs*,

vs.

Fahey, et al.,
 *Defendants*.

No. 5421-PH Civil
Receipt

The undersigned, Federal Home Loan Bank of San Francisco, hereby acknowledges receipt of the following documents:

Original Straight Note dated June 28, 1947, for $2,300,000 in favor of Federal Home Loan Bank of San Francisco, as payee, signed by Long Beach Federal Savings and Loan Association by A. V. Ammann, Conservator.

Original Straight Note dated November 20, 1947, for $500,000 in favor of Federal Home Loan Bank of San Francisco, as payee, signed by Long Beach Federal Savings and Loan Association by A. V. Ammann, Conservator.

Original Straight Note dated November 22, 1947, for $2,000,000 in favor of Federal Home Loan Bank of San Francisco, as payee, signed by Long Beach Federal Savings and Loan Association by A. V. Ammann, Conservator.

Original Straight Note dated November 24, 1947, for $1,500,000 in favor of Federal Home Loan Bank of San Francisco, as payee, signed by Long Beach Federal Savings and Loan Association by A. V. Ammann, Conservator.

Collection Agreement dated October 23, 1934 executed by Long Beach Federal Savings and Loan Association and Federal Home Loan Bank of Los Angeles.

Subordination Agreement dated October 23, 1934, executed by Long Beach Federal Savings and Loan Association.

Pledge Agreement dated July 10, 1943 executed by Long Beach Federal Savings and Loan Association. Application for Advances and Signature Card dated November 8, 1944, executed by Long Beach Federal Savings and Loan Association.

Application for Advances and Signature Card dated May 20, 1946 executed by Long Beach Federal Savings and Loan Association by A. V. Ammann, Conservator.

Pledge Agreement dated May 20, 1946, executed by Long Beach Federal Savings and Loan Association by A. V. Ammann, Conservator.

Collection Agreement dated May 28, 1946, executed by Long Beach Federal Savings and Loan Association by A. V. Ammann, Conservator, and Federal Home Loan Bank of San Francisco by A. C. Newell, Vice President and E. E. Pearson, Assistant Secretary.

Subordination Agreement dated May 28, 1946, executed by Long Beach Federal Savings and Loan Association by A. V. Ammann, Conservator.

Subordination Agreement dated January 6, 1948 executed by Long Beach Federal Savings and Loan Association by A. V. Ammann, Conservator.

The undersigned further acknowledges receipt of United States Government Bonds in the aggregate par value of $5,300,000.00, with interest coupons attached, described as follows:

| Description | Denominations | Maturity | The following and subsequent Coupons Attached |
|---|---|---|---|
| 2¼% Treasury Bonds 1959-62 (Dtd 11-15-45) | 26 at 100,000 Nos. 1912/35; 2077/8 <br> 2 at 10,000 Nos. 84345; Star 380 | 12-15-62 | 6-15-48 |
| 2½% Treasury Bonds of 1967-72 (Dtd 11-15-45) | 13 at 100,000 Nos. 50757; 52982/8; 53218/22 <br> 13 at 10,000 Nos. 60859/60; 62487; 208876/80 88404; 177089/90; 18485/6 | 12-15-72 | 6-15-48 |
| 2½% Treasury Bonds of 1967-72 (Dtd 6-1-45) | 12 at 100,000 Nos. 7564; 10391; 27972/3; 30175/6; 26634; 22235; 7559; 8462; 16015/6 <br> 5 at 10,000 Nos. 74797; 20476/9 | 6-15-72 | 6-15-48 |

The undersigned further acknowledges receipt of the sum of Nine Hundred Ninety-Four Thousand Eight Hundred Thirteen and 74/100 Dollars ($994,813.74), together with Fourteen Cents (14¢) per day from and after January 1, 1955 to date of receipt, to-wit, the total sum of ................................................................. .......................................... Dollars ($............).

Dated: ........................................, 1955.

Federal Home Loan Bank of San Francisco,

By ........................................

A. C. Newell, Vice President.

And it is Further Ordered that a writ of injunction issue directed to Respondents Mallonee, Bucklin and Fergus, and any other shareholder-members of said Long Beach Federal Savings and Loan Association, said Long Beach Federal Savings and Loan Association, said Title Service Company, said Robert H. Wallis and said Home Investment Company, their officers, agents, servants, employees, and attorneys, and all persons acting in active concert or participation with them, in the words and figures following, to wit:

THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

FEDERAL HOME LOAN BANK OF SAN FRANCISCO; W. W. MCALLISTER
and WILLIAM K. DIVERS, as members of the HOME LOAN BANK BOARD;
A. V. AMMANN; GEORGE K. BRAMLEY; and the FEDERAL SAVINGS AND
LOAN INSURANCE CORPORATION, a federal corporation,

*Petitioners,*

VS.

HONORABLE PEIRSON M. HALL, Judge of the District Court of the United
States for the Southern District of California; THE UNITED STATES
DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA; MAL-
LONEE, BUCKLIN, and FERGUS, acting as THE SHAREHOLDERS PROTEC-
TIVE COMMITTEE OF LONG BEACH FEDERAL SAVINGS AND LOAN ASSO-
CIATION; LONG BEACH FEDERAL SAVINGS AND LOAN ASSOCIATION; TI-
TLE SERVICE COMPANY; ROBERT H. WALLIS; FIRST FEDERAL SAVINGS
AND LOAN ASSOCIATION OF WILMINGTON; HOME INVESTMENT CO.;
GEORGE TURNER; FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF
BELLFLOWER and JOHN D. WILLHOIT,

*Respondents.*

No. 14378

### Injunction

Upon consideration of the Petition for Writ of Mandate, Injunction, and other appropriate relief filed in this Court by Petitioners, the returns and answers of Respondents thereto, the exhibits, files and records of the above entitled proceeding and related appeals hereinafter referred to and after hearing, this Court finds:

1. On April 2, 1952 this Court rendered its opinion and judgment in Appeal No. 12511, being an appeal by Petitioners herein from an order entered by Respondent District Court of the United States for the Southern District of California in consolidated civil actions Nos. 5421 and 5678 in said District Court, to which Petitioners and Respondents herein (other than Respondent District Court) were parties. As more fully appears from said opinion, reported as Home Loan Bank Board v. Mallonee, 9 Cir., 196 F.2d 336, certiorari denied Mallonee v. Fahey, 345 U.S. 952, 73 S.Ct. 863, 97 L.Ed. 1374, this Court held that the amended and supplemental complaints, cross-claims, and third party complaints of Mallonee, Bucklin and Fergus, as shareholder-members of the Long Beach Federal Savings and Loan Association of Long Beach, California, of said Long Beach Federal Savings and Loan Association, of Title Service Company, of Robert H. Wallis, and of Home Investment Co. failed to state any claim for relief within the jurisdiction of said District Court because the basic, underlying issue presented by said pleadings, i. e., the validity of the appointment of A. V. Ammann as Conservator of said Long Beach Federal Savings and Loan Association had been settled by the opinions and judgments of the Supreme Court of the United States, Fahey v. Mallonee, 332 U.S. 245, 67 S.Ct. 1552, 91 L.Ed. 2030, and Ex parte Fahey, 332 U.S. 258, 67 S.Ct. 1558, 91 L.Ed. 2041; because said A. V. Ammann was validly authorized to act as the Conservator of said Long Beach Federal Savings and Loan Association; and because said Mallonee, Bucklin and Fergus and said Long Beach Federal Savings and Loan Association were precluded, by their failure to resort to the administrative remedy tendered them by the Federal Home Loan Bank Administration in connection with the appointment and conduct of said Conservator, from obtaining any judicial relief; and that therefore said District Court should have dismissed said actions.

2. On November 6, 1952 this Court rendered its opinion and judgment in

Appeal No. 12591, being an appeal by Petitioners herein from an order entered by Respondent District Court in said consolidated actions Nos. 5421 and 5678. As more fully appears from said opinion, reported as Fahey v. O'Melveny & Myers, 200 F.2d 420, this Court held that the amended complaints, cross-claims and third party complaints of Mallonee, Bucklin and Fergus as shareholder-members of said Long Beach Federal Savings and Loan Association, of said Long Beach Federal Savings and Loan Association, of said Federal Home Loan Bank of Los Angeles, and of six member-stockholders of said bank failed to state any claim for relief within the jurisdiction of said District Court because, among other grounds, the basic issue presented by said pleadings, i. e., the legality of the action of the Federal Home Loan Bank Administration in liquidating, reorganizing and dissolving the Federal Home Loan Bank of Los Angeles, transferring its assets and liabilities to the Federal Home Loan Bank of Portland, Oregon, changing the name of said Federal Home Loan Bank of Portland to Federal Home Loan Bank of San Francisco and moving it to San Francisco did not present any justiciable controversy.

3. On May 21, 1953, this Court issued to said District Court its mandate in said appeals Nos. 12,511 and 12,591 and therein remanded said consolidated causes to said District Court with the following directions:

"1. Dismiss Civil Action No. 5678-P.H. at the cost of plaintiffs.

2. Dismiss the following pleadings in Civil Action 5421-P.H.:

(a) The complaint of Mallonee, Bucklin and Fergus, and all amendments and supplements thereto, at the cost of said complainants;

(b) The cross-claim and third party complaint of Long Beach Federal Savings and Loan Association, and all amendments and supplements thereto, at the cost of third party complainant and cross-claimant;

(c) The cross-claim of Federal Home Loan Bank of Los Angeles, and all amendments and supplements thereto, at the cost of said cross-claimant;

(d) The cross-claim in interpleader of Title Service Company, and all amendments and supplements thereto, at the cost of said cross-claimant;

(e) The cross-claim in interpleader, and all amendments and supplements thereto, of Robert H. Wallis, at the cost of said cross-claimant;

3. Dissolve, set aside and vacate the order of said District Court entered the 13th day of March, 1948, in so far as the same requires Federal Home Loan Bank of San Francisco to deposit in the Registry of said District Court promissory notes in the aggregate principal amount of $6,300,000.00, collateral securing the same and any other documents or property deposited by San Francisco Bank pursuant to said order; and return to Federal Home Loan Bank of San Francisco without charge or impairment said promissory notes, together with Government bonds in the face amount of $5,300,000.00 with all interest coupons attached thereto at the time of deposit and together with cash from the sum in the Registry of said Court sufficient to make the combined total sum of $6,342,098.35, with interest on $6,300,000.00 at 2% per annum from the 10th day of March, 1948 until the date of such release.

4. Set aside and vacate said order of preliminary injunction entered the 2nd day of December, 1949.

You, therefore, are hereby commanded that such proceedings be had in said consolidated causes, in conformity with the opinions and judgments of this Court, as according to right and justice, and the laws of the United States, ought to be had, the said appeals notwithstanding."

4. On November 23, 1953 this Court rendered its opinion and judgment in Appeals Nos. 12,575, 12,893, 13,055, 13,411 and 13,558, being appeals by Petitioners herein from orders entered by

said Respondent District Court in said consolidated actions Nos. 5421 and 5678. As more fully appears from said opinion reported as Fahey v. Calverley, 9 Cir., 208 F.2d 197, certiorari denied 347 U.S. 955, 74 S.Ct. 680, 98 L.Ed. 1100, this Court again held that said District Court was without jurisdiction of the subject matter of either of said consolidated actions Nos. 5421 and 5678; that said consolidated actions presented no justiciable controversy within the jurisdiction of said District Court; and that this Court's previous decisions in said consolidated causes required not only the dismissal of the principal pleadings and proceedings but also the dismissal of matters ancillary thereto.

5. On May 4, 1954 this Court issued its mandate to said District Court in said Appeals Nos. 12,575, 12,893, 13,055, 13,411 and 13,558, wherein said District Court was directed to take such proceedings in said consolidated causes, in conformity with the opinion and judgment of this Court, as according to right and justice, and the laws of the United States, ought to be had, the said appeals notwithstanding.

6. The provisions of Sections 501 and 503 of the Housing Act of 1954, Act of August 2, 1954, 68 Stat. 590, amending Section 402(c) (4) of the National Housing Act and subsection (d) of Section 5 of the Home Owners' Loan Act of 1933 do not affect in any way the force and applicability of this Court's said opinions, judgments and mandates and do not vest said District Court with any jurisdiction over the subject matter of said consolidated actions Nos. 5421 and 5678, or actions Nos. 13,979, 15,588, 17,133, 17,152, 17,153, or 17,154 referred to in paragraph 7 below.

7. Notwithstanding said opinions, judgments and mandates of this Court, said Mallonee, Bucklin and Fergus, said Long Beach Federal Savings and Loan Association, said Title Service Company, said Robert H. Wallis, and said Home Investment Company, have repeatedly failed and refused to give due force and effect to this Court's said opinions, judgments and mandates and have subjected Petitioners herein to oppressive harassment and expense by filing in said District Court additional complaints, cross-claims and cross-complaints against Petitioners herein seeking to relitigate the same issues finally determined by this Court's said opinions and judgments in the following actions now pending in said District Court: Federal Home Loan Bank of San Francisco v. Long Beach Federal Savings and Loan Association, Civil Action No. 13,979; Long Beach Federal Savings and Loan Association v. Federal Savings and Loan Insurance Corporation, et al., Civil Action No. 15,-588; Long Beach Federal Savings and Loan Association v. The United States of America, et al., Civil Action No. 17,133; Long Beach Federal Savings and Loan Association v. Federal Savings and Loan Insurance Corporation, et al., Civil Action No. 17,152; Long Beach Federal Savings and Loan Association v. Federal Savings and Loan Insurance Corporation, et al., Civil Action No. 17,153; and Long Beach Federal Savings and Loan Association v. Home Loan Bank Board, et al., Civil Action No. 17,154.

8. The filing of said complaints, cross-claims and cross-complaints by said Mallonee, Bucklin and Fergus, said Long Beach Federal Savings and Loan Association, said Title Service Company, said Robert H. Wallis, and said Home Investment Company constitutes an abuse of the process of said District Court and a violation of the mandates of this Court referred to above. Under the circumstances the usual remedies available to Petitioners herein of pleading res judicata to said complaints, cross-claims and cross-complaints and of taking appeals to this Court from appealable orders entered, or which may hereafter be entered, in said causes by said District Court are inadequate, and the issuance of an injunction by this Court restraining the relitigation of issues finally determined by said opinions and judgments of this Court is an appropriate and necessary means of enforcing compliance with said opinions and judgments of this Court.

Now, Therefore, in accordance with the opinion of this Court entered in this proceeding on July 18, 1955, It Is Hereby Ordered that Respondents Mallonee, Bucklin and Fergus, and any other shareholder-members of said Long Beach Federal Savings and Loan Association, said Long Beach Federal Savings and Loan Association, said Title Service Company, said Robert H. Wallis and said Home Investment Company, their officers, agents, servants, employees, and attorneys, and all persons acting in active concert or participation with them be, and they hereby are perpetually enjoined and restrained from instituting, maintaining or prosecuting in said Civil Actions Nos. 13,979, 15,588, 17,133, 17,152, 17,153, and 17,154, or in any other suit or action now pending or which may be hereafter brought in said District Court of the United States for the Southern District of California, or in any other court, any action, pleading, or motion bringing in question:

(1) The validity of the appointment of A. V. Ammann as Conservator of said Long Beach Federal Savings and Loan Association; (2) That said A. V. Ammann was validly authorized to act as the Conservator of said Long Beach Federal Savings and Loan Association during his tenure as Conservator; (3) That said Mallonee, Bucklin and Fergus and said Long Beach Federal Savings and Loan Association are precluded, by their failure to resort to the administrative remedy tendered them by the Federal Home Loan Bank Administration in connection with the appointment and conduct of said Conservator, from obtaining any judicial relief based on the alleged invalidity of the appointment of said A. V. Ammann as Conservator of said Long Beach Federal Savings and Loan Association or on his alleged lack of authority to act as the Conservator of said Association during his tenure as Conservator; (4) the legality of the action of the Federal Home Loan Bank Administration in liquidating, reorganizing and dissolving the Federal Home Loan Bank of Los Angeles, transferring its assets and liabilities to the Federal Home Loan Bank of Portland, in changing the name of said Federal Home Loan Bank of Portland to Federal Home Loan Bank of San Francisco, and in moving it to San Francisco; or (5) the present legal existence of the Federal Home Loan Bank of San Francisco as the duly authorized Federal Home Loan Bank for the Eleventh Home Loan Bank district as readjusted by Federal Home Loan Bank Administration Order No. 5083, dated March 29, 1946.

UNITED STATES of America, Plaintiff-Appellee,